IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT MARK STEPHENS,           )
                                )
                Plaintiff,       )
                                )
v.                              )        Case No. CIV-10-166-D
                                )
JUSTIN JONES, *et al.*,           )
                                )
                Defendants.      )


**REPORT AND RECOMMENDATION ON THE DEFENDANTS'
MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT**

Mr. Robert Stephens is a state inmate. He alleges that during his stay at the William

S. Key Correctional Center, prison officials:

- interfered with access to the courts by delaying internet information,[1] opening legal mail, depriving him of legal materials, and providing inadequate grievance procedures;

- violated the first and fourteenth amendments through misuse of administrative procedures;

- retaliated through termination of a job;

- disclosed confidential matters;

---

[1]     In the complaint, Mr. Stephens initially stated that he had been "denied" the internet information. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 7 (Feb. 18, 2010). But later the Plaintiff indicated that he had been unable to "timely" obtain the internet information. *Id.* at p. 10. Mr. Stephens' exhibits reflect his ultimate receipt of the internet information approximately eleven days after it had been collected. *See* Plaintiff's Reply to Defendants' Response to Motion for TRO [Doc. 3] and Supplement to Motion for TRO and Preliminary Injunction [Doc. 62], Exh. 17 (Sept. 15, 2010). Consequently, the Court should construe the Plaintiff's claim as one involving a delay in the access to internet information.

- showed deliberate indifference to the Plaintiff's illnesses and the need to follow a prescribed diet; and

- denied due process and equal protection through compulsory participation in a prison program.

Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 7-22 (Feb. 18, 2010). Invoking 42 U.S.C. § 1983, Mr. Stephens seeks declaratory, injunctive, and monetary relief. *Id.* at pp. 1, 23.

Defendants Justin Jones, Genese McCoy, Donna Laymon, Marvin Vaughn, William Monday, Mary Stebens, Dr. Cuong Pham, John Stewart, Carrie Bridges, Joe Owens, Jackie Perkins, and Karen Walker have moved for dismissal or summary judgment. *See* Defendants' Motion to Dismiss/Motion for Summary Judgment (Sept. 24, 2010).[2] The motion should be granted in part and denied in part.

## THE PLAINTIFF'S PROCEDURAL OBJECTION TO THE DISPOSITIVE MOTION

The Plaintiff objects to the dispositive motion on grounds that it did not "begin" with a "section . . . that contain[ed] [a] concise statement of materials facts." Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 2 (Dec. 3, 2010). The Defendants did provide the statement of undisputed facts, although it did not appear at the beginning of their brief. *See* Defendants' Motion to Dismiss/Motion for Summary Judgment at p. 4 (Sept. 24, 2010). The Defendants' placement

---

[2]     Mr. Stephens has filed a cross-motion for summary judgment. *See* Plaintiff's Motion for Summary Judgment (Sept. 24, 2010). That motion will be addressed in a separate report.

of the section in their brief did not prejudice the Plaintiff, and the Court should overrule the objection based on the technical violation of LCvR 56.1(b). *See* LCvR 1.2(c) (discretion for the trial judge to waive a local rule "when the administration of justice requires").

<u>OFFICIAL CAPACITY CLAIMS: DISMISSAL</u>

Mr. Stephens seeks monetary damages, and Defendants Jones and McCoy enjoy Eleventh Amendment immunity for these claims in their official capacities. However, the Eleventh Amendment does not prevent the prosecution of claims for injunctive or declaratory relief.

I.     <u>The Plaintiff's Request for Monetary Relief</u>

Defendants Jones and McCoy are employees of the Department of Corrections. *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 2 (Feb. 18, 2010). Thus, the official capacity claims for damages against Mr. Jones and Ms. McCoy are foreclosed under the Eleventh Amendment.[3]

This amendment bars suit in federal court against a state. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). When a state official is named as a defendant, the Eleventh Amendment continues to bar the action "if the state is the real, substantial party in interest." *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001). An exception exists when Eleventh Amendment immunity is waived by the State or abrogated by Congress. *See Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 866 (10th Cir. 2003).

---

[3]    All of the other defendants had been sued only in their personal capacities. *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 3-6 (Feb. 18, 2010).

But the State of Oklahoma has not waived its Eleventh Amendment immunity. *See* Okla. Stat. tit. 51 § 152.1(B) (2001) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). And Congress did not abrogate the states' Eleventh Amendment immunity through the enactment of Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, the Eleventh Amendment forecloses assertion of an official capacity claim against Mr. Jones and Ms. McCoy for monetary relief. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120 (1984). As a result, these claims should be dismissed without prejudice.[4]

II.     The Claims for Injunctive and Declaratory Relief

Mr. Stephens argues that "a state official in his official capacity may be sued for injunctive relief to force the state or state agency for whom the official works to obey the Constitution." Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 7 (Dec. 3, 2010). The Plaintiff is correct.

Official capacity claims for equitable relief are not ordinarily subject to the Eleventh Amendment when they are prospective. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998). Relief is considered "prospective" when it is "designed to end a continuing violation of federal law

---

[4]     *See Wideman v. Colorado*, 2010 WL 3766575, Westlaw op. at 2 (10th Cir. Sept. 28, 2010) (unpublished op.) (affirming dismissal of Eleventh Amendment claims, but remanding with instructions to make the dismissal without prejudice), *cert. denied*, __ U.S. __, 131 S. Ct. 1474 (2011).

[and is] necessary to vindicate the federal interest in assuring the supremacy of that law."

*Green v. Mansour*, 474 U.S. 64, 68 (1985) (citations omitted).

In the complaint, the Plaintiff seeks declaratory relief and a permanent injunction to include protection of his legal materials and prevention of retaliatory acts by the Oklahoma Department of Corrections' ("DOC"). Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 23 (Feb. 18, 2010). These requests are prospective and are not barred by the Eleventh Amendment.[5] In these circumstances, the Court should reject the Defendants' argument for dismissal under the Eleventh Amendment as it pertains to the claims for declaratory and injunctive relief.

CLAIMS INVOLVING INADEQUACY OF THE DIET
AND BREACH OF CONFIDENTIALITY:
THE DEFENDANTS' ENTITLEMENT TO SUMMARY
JUDGMENT BASED ON THEIR EXHAUSTION DEFENSE

In part, the Defendants seek summary judgment based on a failure to exhaust administrative remedies. Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 6-11 (Sept. 24, 2010). The Court should grant the Defendants' motion for summary judgment based on nonexhaustion of administrative remedies for the claims involving failure to provide an adequate diet and breach of confidentiality.

---

[5]     *See Muscogee (Creek) Nation v. Oklahoma Tax Commission*, 611 F.3d 1222, 1232 (10th Cir. 2010) (stating that the plaintiffs' request for declaratory relief and an injunction against state officials to prevent "further" interference was prospective and not barred by the Eleventh Amendment).

I.    The Summary Judgment Standard

Summary judgment is necessary when the movants demonstrate: (1) the absence of a "genuine dispute as to any material fact," and (2) their entitlement "to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

Application of the summary judgment standard depends on whether the issue involves an element of the Plaintiff's *prima facie* case or an affirmative defense.[6]

On the claims involving a prescribed diet and breach of confidentiality, the Defendants seek summary judgment based on nonexhaustion of administrative remedies. *See supra* p. 5. Because this issue involves an affirmative defense,[7] the Defendants bear the burden of proof.[8] As a result, the Defendants must demonstrate the absence of a disputed material fact on the issue of exhaustion. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the Defendants satisfy this burden, the Plaintiff would incur a duty to

---

[6]    *See Johnson v. Riddle,* 443 F.3d 723, 725 n.1 (10th Cir. 2006) (discussing the difference in the application of the summary judgment standard for elements of the plaintiff's prima facie case and affirmative defenses).

[7]    *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]").

[8]    *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant.").

"demonstrate with specificity the existence of a disputed material fact." *Id*. In the absence of such a showing by the Plaintiff, the Defendants would be entitled to summary judgment on their affirmative defense. *See id*.

II.     The Exhaustion Requirement

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2006). This law "requires proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

III.    The Administrative Process

Under the DOC administrative process, an inmate should initially attempt to informally resolve the matter with a staff member. *See* Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (OP-090124 at p. 4 (eff. Sept. 8, 2009)). If that attempt is unsuccessful, an inmate may file a request to staff. *See id.*, Exh. 1 (OP-090124 at pp. 4-5 (eff. Sept. 8, 2009)). The prisoner can file a grievance if he is dissatisfied with the result. *See id.*, Exh. 1 (OP-090124 at p. 5 (eff. Sept. 8, 2009)). If the inmate remains dissatisfied, he can appeal to the administrative review authority or the chief medical officer. *See id.*, Exh. 1 (OP-090124 at pp. 8-9 (eff. Sept. 8, 2009)). At that point,

the administrative process would be complete.  *See id.*, Exh. 1 (OP-090124 at p. 11 (eff. Sept.

8, 2009)).

IV.     Availability of an Administrative Remedy on the Claims Involving an Inadequate Diet and Breach of Confidentiality

The Plaintiff opposes summary judgment on these claims, arguing that the

administrative remedies were "unavailable and/or inadequate."  Plaintiff's Response with

Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc.

66] at pp. 4-14 (Dec. 3, 2010).  Mr. Stephens supplies many reasons, but none are

convincing.

For example, the Plaintiff alleges that prison officials use the grievance procedures

as an "obstacle" and that administrative remedies were unavailable or inadequate because:

- prison officials failed to follow written procedures for tracking grievances, keeping records, and preventing direct involvement by supervising officials,

- the need to attempt informal resolution before filing a request to staff "often caus[es] expiration of the administrative remedy time limitation,"

- prison officials do not recognize a distinction between the DOC terms "issue" and "incident,"

- prison officials disregard the procedures for "Emergency or Sensitive Grievances," and

- prison officials misled Mr. Stephens regarding the "appropriate staff" with whom to file a request to staff.

Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for

Summary Judgment [Doc. 66] at pp. 4, 8-9, 13-15 (Dec. 3, 2010).

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted). To avoid exhaustion, however, Mr. Stephens must prove that an administrative remedy was unavailable.[9]

The Plaintiff has not presented evidence to satisfy this burden, as he has not linked his current claims involving the diet or confidentiality to:

- prison officials' alleged failure to track and document grievances or to keep supervisors from direct involvement in the exhaustion process,

- the requirement for informal resolution,

- a failure to recognize the difference between the terms "issues" and "incidents,"

- errors in the application of procedures for emergency or sensitive grievances, or

- misleading statements about who the "appropriate staff" members were.

Thus, these allegations would not excuse exhaustion on the claims involving dietary needs or confidentiality.

---

[9] *See supra* pp. 6-7 (explaining that once the Defendants demonstrate the absence of a disputed material fact on the issue of exhaustion, the burden shifts to Mr. Stephens to "demonstrate with specificity the existence of a disputed material fact"); *see also Gonyea v. Mink*, 206 Fed. Appx. 745, 747 (10th Cir. Nov. 14, 2006) (unpublished op.) (upholding dismissal when the prisoner plaintiff had failed to demonstrate actual prevention of administrative exhaustion).

V.    Failure to Exhaust Available Administrative Remedies on the Claim Involving Deliberate Indifference to a Medically Prescribed Diet

The dietary claim involves Ms. Karen Walker's alleged substitutions for food items that had been prescribed. Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 8, 12-13, 17, 20 (Feb. 18, 2010). On this claim, Mr. Stephens filed a request to staff. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 11 at pp. 1-2 (June 23, 2010). A staff member rejected the complaint, and the Plaintiff filed a grievance on July 15, 2009. *See id.*, Exh. 11 at pp. 1, 3. Authorities denied relief, and Mr. Stephens appealed. *See id.*, Exh. 11 at pp. 4-7. However, that appeal did not comply with administrative requirements.

To appeal, Mr. Stephens completed a form stating that he had additional evidence and that the warden had probably erred in his denial of the grievance. *See id.*, Exh. 11 at pp. 4, 7. The designee of the DOC Director returned the administrative appeal on grounds that it: (1) was not legibly written in blue or black ink; (2) included two issues, medical and food service; and (3) requested disciplinary action against staff, which was not a subject to be addressed in the grievance process. *See id.*, Exh. 11 at p. 9.[10] With return of the material, Mr. Stephens was told that he could refile the administrative appeal within ten days. *Id.*

---

[10]    In addition, the director's designee imposed a grievance restriction in light of the Plaintiff's repeated submission of grievances for the same issue and with continued procedural error. *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 11 at p. 8 (June 23, 2010).

In the special report, authorities stated that the Plaintiff had failed to utilize his "opportunity to file another grievance by correcting the defects." *Id*. at p. 5. This statement in the special report is to be treated as an affidavit,[11] and the Plaintiff has not presented any contrary evidence.

The Plaintiff has presented multiple attacks on the special report as a whole. For example, the Plaintiff argues that the special report:

- omitted "material facts and known evidence"[12] and

- contained an unredacted document which should have been filed under seal.[13]

But these allegations do not involve the statement in the special report regarding the failure to resubmit the administrative appeal after return of the documentation to Mr. Stephens. Indeed, Mr. Stephens does not address the issue in his response brief. As a result, the unrebutted statement in the special report must be accepted as true, and the Court should conclude as a matter of law that the Plaintiff did not cure the defects in his administrative appeal after he was given the opportunity to do so.

Arguably, the Director's designee might have been mistaken when she said that the grievance had improperly addressed two issues, medical and food service. *See supra* p. 10.

---

[11] *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("A [special] report is treated like an affidavit . . . ." (citation omitted)).

[12] Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 11 (Dec. 3, 2010).

[13] Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 21 (Dec. 3, 2010).

In the grievance, Mr. Stephens appeared to confine the complaint to his diet. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 11 at pp. 3-4 (June 23, 2010). When asked "[t]he nature of [his] complaint," Mr. Stephens stated:

> The one issue of this grievance is: Karen Walker's failure to follow DOC food service procedures is causing me major health problems, as shown by Dr. Pham ordering a battery of extra medical tests on June 30, 2009. How I have been affected: Since March 7, 2009, I have been seeking treatment for major health problems from the WSKCC Medical Staff, Dr. Pham et al. On June 30, 2009, Dr. Pham suggested that my major health problems appear to come from a milk source (nurses were concerned by a food source) and further testing was ordered, as well as a medical lay-in from work. My major health problem symptoms include: diarreah [sic] (often bloody or with a yellow fluid and gas discharge), high cholesterol, high blood pressure, abdominal pain and swelling, etc.

*Id.* One might reasonably regard the reference to the medical treatment merely as substantiation for Mr. Stephens' criticism of the diet. Regardless of the validity of the DOC designee's rationale, however, Mr. Stephens could have cured the perceived defect by resubmitting the administrative appeal within the ten-day period that he was given.

The Tenth Circuit Court of Appeals addressed a similar issue in *Jernigan v. Stuchell*, 304 F.3d 1030 (10th Cir. 2002), and *Hoover v. West*, 93 Fed. Appx. 177 (10th Cir. Feb. 19, 2004) (unpublished op.). In *Jernigan v. Stuchell*, authorities denied receipt of a grievance, but the plaintiff alleged that it had been lost or misfiled. *See Jernigan v. Stuchell*, 304 F.3d at 1032. In *Hoover v. West*, authorities returned a grievance unanswered because of a mistake on their part. *See Hoover v. West*, 93 Fed. Appx. at 178-79. In both cases, officials gave the inmates ten days to cure the defects, and the prisoners failed to do so. *See Jernigan*

*v. Stuchell*, 304 F.3d at 1032-33; *Hoover v. West*, 93 Fed. Appx. at 179. The failure to correct the error in the ten-day period was fatal even though in both cases, the original submissions may have been proper. *Jernigan v. Stuchell*, 304 F.3d at 1032-33; *Hoover v. West*, 93 Fed. Appx. at 181-82.

Under *Jernigan* and *Hoover*, Mr. Stephens' failure to comply with the official's instructions would have been fatal even if he had correctly followed the administrative policy to that point.

Mr. Stephens filed a request to staff, grievance, and administrative appeal. *See supra* p. 10. But Ms. Morton believed that the administrative appeal did not comply with the prison's administrative requirements. *See supra* pp. 7-8, 10. The undisputed evidence is that authorities gave Mr. Stephens ten days to cure the defect. *See supra* p. 10. Under *Jernigan* and *Hoover*, the failure to take advantage of this opportunity would have rendered the administrative process unexhausted even if Ms. Morton had been mistaken about the presence of two issues in the grievance. *See supra* pp. 12-13. Here, however, the Plaintiff has not challenged the validity of the official's reasons and the undisputed failure to cure the defects in the administrative appeal would render the dietary claim unexhausted.

VI.  Failure to Exhaust Available Administrative Remedies on the Claim Involving Breach of Confidentiality

According to the Plaintiff, the prison psychologist breached client-patient confidentiality when he informed Mr. Monday that Mr. Stephens was not mentally fit to

continue working in the law library. Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 13-14, 16-17, 19 (Feb. 18, 2010). The Defendants urge nonexhaustion of the claim. Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 6-11 (Sept. 24, 2010). For this argument, the Defendants confuse the sequence of events. Ultimately, however, the Defendants correctly argue that the Plaintiff had failed to properly complete the administrative process when his submission of November 5, 2009, was returned.

The Plaintiff submitted a request to staff on August 5, 2009. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 4 at p. 1 (June 23, 2010). Ms. Mary Stebens responded, and the Plaintiff filed a grievance. *Id*., Exh. 4 at pp. 1-2. When the warden denied this grievance, Mr. Stephens appealed to the Chief Medical Officer on Form "090124B." *Id*., Exh. 4 at pp. 3-4, 6. There the Plaintiff argued that the warden should have obtained a response to the grievance by the Correctional Health Services Administration. *Id*. Ms. Genese McCoy, Medical Services Administrator, declined to answer the appeal, returned the documentation to Mr. Stephens, and placed Mr. Stephens on a twelve-month grievance restriction. *Id*., Exh. 4 at p. 7. Ms. McCoy stated that Mr. Stephens was to use a different form, "DOC 060125V," and was not allowed to attach anything to the document. *Id*.

Beginning at this point, the Defendants' summary of events appears to reflect confusion. The Defendants state two times that the Plaintiff did not resubmit the appeal. Defendants' Motion to Dismiss/Motion for Summary Judgment at p. 9 ¶ 2, p. 10 ¶ 5 (Sept. 24, 2010). According to the Defendants, the Plaintiff instead filed a new grievance on

14

November 5, 2009. *Id.* at p. 10 ¶ 6. The Defendants' characterization is incorrect. The document filed on November 5, 2009, was actually a new administrative appeal on the form that Mr. Stephens had been told to use: Form "DOC 060125V." Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 10 at pp. 1-2 (June 23, 2010).

Ms. McCoy ultimately returned the second administrative appeal to Mr. Stephens, declining to answer for two reasons:

- Mr. Stephens was on a grievance restriction by this time and had failed to submit a "duly verified affidavit" with his administrative appeal and

- the grievance had involved a complaint against staff, rather than a medical issue, according to the facility head.

Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 10 at p. 4 (June 23, 2010). The Plaintiff does not dispute the Defendants' allegation that the administrative appeal was not resubmitted after Ms. McCoy had returned the document the second time.[14] Instead, the Plaintiff presents eight arguments regarding errors in the Defendants' summary of events and deviations from policy in the disposition of his grievance and the two administrative appeals.

The Plaintiff argues that:

---

[14]    Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 19 (Dec. 3, 2010) ("Defendants' Motion, at p.10 ¶#6, was not resubmitted . . . .").

- the DOC's copy of the first administrative appeal had suggested the presence of an attachment when there had been none,

- William Monday should not have been involved in resolution of the issue,

- Mr. Monday used an outdated form to respond to the grievance,

- this use of an outdated form improperly led to the grievance restriction,

- the issue in the grievance involved violation of a DOC medical procedure, and Ms. McCoy's statement to the contrary was inaccurate,

- Mary Stebens should have been the person to respond to the grievance,

- the Defendants inaccurately stated that the Plaintiff had failed to resubmit the administrative appeal after return of the documents, and

- the Plaintiff did not resubmit the administrative appeal, after it was returned the second time, due to the misleading instruction that no other pages were to be submitted.

Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at pp. 17-19 (Dec. 3, 2010). Despite the numerosity of the arguments, they are unconvincing when viewed either in isolation or in combination.

Each argument obscures an undeniable failure to comply with the requirements for an inmate subject to a grievance restriction. Regardless of whether a grievance restriction had been warranted, it was indisputably in place. Because Mr. Stephens was on a grievance restriction as of November 5, 2009, he had to submit a "duly verified affidavit" under Paragraph IX(B)(2) of OP-090124.[15]

_____

[15] This policy indicated that a grievance restriction would require the offender to "submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance," stating that the contents were true and listing each grievance submitted in the prior twelve months.

The documentary evidence does not include such an affidavit, and the Plaintiff does not suggest that he had submitted one. Thus, Mr. Stephens failed to properly submit the second administrative appeal, and Ms. McCoy's first reason for returning the document[16] was unquestionably correct.

The administrative policies state that when the affidavit is omitted, authorities must return the document to the offender with an explanation. Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (OP-090124 at p. 14 (eff. Sept. 8, 2009)). Thus, when Ms. McCoy obtained the second administrative appeal without the required affidavit, she had an obligation to return the document to Mr. Stephens with an explanation for her action. The document reflects Ms. McCoy's compliance with this directive. *See supra* p. 15.

At that point, Mr. Stephens had an opportunity to cure the defect because DOC policy states that when an administrative complaint is returned, the grievance process would continue upon satisfaction of the "guidelines" associated with a grievance restriction. Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (OP-090124 at p. 14 (eff. Sept. 8, 2009)). But, Mr. Stephens does not suggest further attempts to cure the defect.

---

Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (OP-090124 at pp. 13-14 (eff. Sept. 8, 2009)).

[16] *See supra* p. 15.

Instead, Mr. Stephens states that he did not submit a third administrative appeal because of the misleading instruction that he was not to use additional pages. *See supra* pp. 15-16. This prohibition is spelled out in the DOC policy and the form that was in place at the time of Ms. McCoy's letter (October 30, 2009). At that time, the DOC policy stated that a grievance appeal had to be submitted on Form "DOC 060125V" and that "no additional attachments [were] allowed." Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept, 24, 2010) (OP-090124 at p. 9 (eff. Sept. 8, 2009)).[17] Thus, Ms. McCoy was simply noting for Mr. Stephens that if he resubmitted the grievance appeal, he had to use the new form and refrain from submitting attachments. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 9 at p. 7 (June 23, 2010).

---

[17] The Plaintiff complains that he was led to use the wrong form because Mr. Monday had answered the grievance on the wrong form. *See supra* pp. 15-16. The Defendants' submissions of the DOC policy suggest that the procedure had been changed as of September 8, 2009. Before this time, there was no indication in OP-090124 that a grievance appeal had to be submitted on Form "DOC 060125V." This requirement first appeared in the amendment to the policy effective September 8, 2009. Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (OP-090124 at p. 9 (eff. Sept. 8, 2009)). Mr. Stephens submitted the grievance on September 2, 2009, six days before the policy amendment took effect. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 9 at p. 2 (June 23, 2010). Mr. Monday signed his disposition of the grievance two weeks after the effective date of the amendment. *Id.*, Exh. 9 at p. 4. A technical issue conceivably could exist by virtue of the policy change between the time of Mr. Stephens' grievance and Mr. Monday's response. But, the Court need not decide that issue here because Mr. Monday's use of the prior form had nothing to do with Mr. Stephens' ultimate failure to exhaust the claim. Mr. Stephens did resubmit the grievance appeal and the Plaintiff's fatal error involved shortcomings in the second administrative appeal (which was correctly submitted on the new form) rather than in the first administrative appeal (which was on the old form). *See supra* pp. 15, 17; *infra* p. 19.

Mr. Stephens was apparently not misled by these statements, as he did resubmit the administrative appeal on the new form and did not attach any other documents. *Id.*, Exh. 10 at pp. 1-2; *see supra* note 17. Mr. Stephens made other errors when he resubmitted the administrative appeal on November 5, 2009, but he did follow Ms. McCoy's instructions on the correct form and the prohibition against attachments. In short, there was nothing misleading or inaccurate about Ms. McCoy's instructions, and Mr. Stephens abided by them when he submitted the second administrative appeal. He does not say why the same instructions, which he had already complied with, would have deterred him from correcting the unrelated deficiencies identified in his second administrative appeal. *See supra* note 17.

As noted above, the Plaintiff presents still other arguments. *See supra* pp. 15-16. Some pertain to the Defendants' briefing and alleged errors in the DOC's special report. *See supra* pp. 15-16. For example, the Plaintiff points out that the Defendants were mistaken when they said that he had not resubmitted the grievance appeal after it was returned the first time. *See supra* pp. 14-15. The Defendants acknowledged the subsequent submission, but incorrectly referred to the document on November 5, 2009, as a new grievance rather than a second administrative appeal. *See supra* pp. 14-15. The Defendants' erroneous characterization of the document is unfortunate, but does not affect the validity of their underlying argument that the Plaintiff had failed to correct the deficiencies pointed out in the submission of November 5, 2009.

The Plaintiff also states that "the [special report] [had] **omitted the relevant back side** of [his] appeal of Grievance No. 09-46." Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 17 (Dec. 3, 2010) (emphasis in original). The import of this statement is unclear. The document appears in the special report as two pages. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 9 at pp. 3-4 (June 23, 2010). Presumably, Mr. Stephens' remark suggests that the DOC had miscopied the document by making the back side appear as if it had been a separate page, which would have run afoul of the prohibition against attachments. If this had been Mr. Stephens' purpose for the comment, the argument would be misguided because any possible error in copying would have been irrelevant on the issue of exhaustion.

As discussed in the text, the Plaintiff had an opportunity to cure the error in the first administrative appeal even if Ms. McCoy should have accepted it. *See supra* pp. 11-13. Thus, regardless of whether Mr. Stephens had submitted an attachment with his first administrative appeal, he had an opportunity to resubmit the document without attachments and he did so. *See supra* note 17. In these circumstances, a possible copying error - suggesting the presence of an attachment when there had not been one - could not have caused the ultimate failure to exhaust the administrative process. Instead, that failure involved the commission of unrelated errors when Mr. Stephens resubmitted the administrative appeal on November 5, 2009.

Mr. Stephens also argues that the issue involved medical care rather than staff misconduct. *See supra* pp. 15-16. In this argument, the Plaintiff appears to be questioning part of Ms. McCoy's explanation when she returned the second grievance appeal without an answer. At that time, Ms. McCoy stated: "According to the reviewing authority (facility head) at your facility, the nature of your concern involved a complaint against staff, not a medical issue." Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 10 at p. 4 (June 23, 2010). She did not explain the significance of this comment, and its correctness or incorrectness is again irrelevant to the issue of exhaustion.

Ms. McCoy might have been referring to the substance of the second administrative appeal. In the second administrative appeal, Mr. Stephens argued that the grievance should have been answered by the Correctional Health Services Administration because the issue involved a medical matter. *Id.*, Exh. 10 at pp. 1-2. Ms. McCoy's comment could conceivably have signaled disagreement with Mr. Stephens on this point. If so, the disagreement would have been immaterial to exhaustion because Ms. McCoy expressly avoided a substantive answer to the administrative appeal because of the procedural irregularities. *Id.*, Exh. 10 at p. 4.

Ms. McCoy might also have been suggesting that the administrative appeal should have been sent to the administrative review authority rather than to the chief medical

officer.[18]  Even if Ms. McCoy had been wrong about the nature of the second administrative appeal, as alleged, Mr. Stephens did not resubmit the material to anyone after it was returned. Thus, the failure to complete the administrative process cannot be blamed on Ms. McCoy's possible error about whether the proper recipient would have been the administrative review authority or the chief medical officer.

The Plaintiff also complains that William Monday should not have been the person to respond to the grievance.  *See supra* pp. 15-16.  But, again, any error in the handling of the grievance did not affect the ultimate failure to complete the administrative process.  *See supra* note 17.  Mr. Stephens could and did appeal the alleged error in the disposition of his grievance.  *See supra* note 17.  His error was in the way that he went about appealing that disposition.  *See supra* note 17.  Thus, the existence of an error at the grievance stage is immaterial to the Court's inquiry about the proper completion of an administrative appeal.

VII.    Summary

The Defendants seek summary judgment based on part on a failure to properly exhaust administrative remedies on the claims involving:

- inadequacy of the diet and

- breach of confidentiality.

---

[18]     *See* Defendants' Motion to Dismiss/Motion for Summary Judgment, Exh. 1 (Sept. 24, 2010) (statement in the administrative policy, OP-090124 at p. 9,  that "[t]he offender [could] make a final appeal to the administrative review authority or chief medical officer, whichever [was] appropriate").

These arguments are persuasive, and the Court should grant summary judgment to the Defendants on these claims.

CLAIM INVOLVING RETALIATION FOR
TERMINATION OF A PRISON JOB:  THE
UNAVAILABILITY OF DISMISSAL OR SUMMARY JUDGMENT

Mr. Stephens also alleges retaliation when he was terminated from a job in the law library as punishment for the filing of grievances.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 13-14, 16-17, 19 (Feb. 18, 2010).  The Defendants contend that: (1) this claim was unexhausted because the Plaintiff failed to resubmit the grievance after it had been returned for a procedural defect, and (2) the Plaintiff failed to plead or present evidence involving retaliation for the exercise of a constitutional right.  The Court should reject the Defendants' arguments, regardless of whether they are viewed as a basis for dismissal or summary judgment.

I.    Exhaustion of Available Administrative Remedies: Dismissal or Summary Judgment

Rather than file a request to staff on the retaliation claim, Mr. Stephens began with submission of a grievance.  *See* Plaintiff's Reply to Defendants' Response to Motion for TRO [Doc. 3] and Supplement to Motion for TRO and Preliminary Injunction [Doc. 62], Exh. 18  at pp. 2-3 (Sept. 15, 2010).  But the grievance was rejected because it was "[n]ot of a sensitive or emergency nature." *Id.*, Exh. 18 at p. 1.  The Plaintiff was instructed to follow the standard grievance procedures, beginning with a request to staff.  *Id.*

Mr. Stephens complied and filed a request to staff. *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 3 at p. 2 (June 23, 2010). The Defendants and Department of Corrections say that at that point, the Plaintiff failed to resubmit a grievance.[19] But with his response to the dispositive motion, the Plaintiff submitted a grievance on the issue, dated August 12, 2009. Brief in Support of Plaintiff's Motion for Summary Judgment, Exh. 38 at p. 2 (Sept. 24, 2010), *incorporated in* Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 5 (Dec. 3, 2010).

The Defendants assert that there was not a grievance, and the Plaintiff has presented one. In light of the clear evidentiary conflict, the Defendants are not entitled to judgment as a matter of law on the issue. As a result, the Court should reject the Defendants' argument, regardless of whether it is viewed as a theory for dismissal or summary judgment.

II.     Pleading of Sufficient Facts for a Retaliation Claim: Dismissal

In part, the Defendants argue that Mr. Stephens has not alleged specific facts for a retaliation claim. Defendants' Motion to Dismiss/Motion for Summary Judgment at p. 25

---

[19]     For example, after stating that the Defendants had responded to the request to staff, the DOC comments in the special report: "The Plaintiff had the opportunity to file a grievance. The Plaintiff did not exhaust his administrative remedies on this count." Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Administrative Investigation at p. 2 (June 23, 2010). Similarly, in their dispositive motion, the Defendants state: "On July 26, 2009, Plaintiff submitted an RTS to William Monday regarding Plaintiff's job change. After receiving a response, Plaintiff failed to file a grievance on the issues in his request." Defendants' Motion to Dismiss/Motion for Summary Judgment at p. 11 (Sept. 24, 2010) (citations omitted).

(Sept. 24, 2010) ("Plaintiff's claims are merely conclusory allegations that may not support a claim of retaliation."). This argument is not persuasive.

A. The Elements of a Cause of Action for Retaliation

For the retaliation claim, three elements exist:

- the existence of a constitutionally protected activity,

- action by the defendant "that would chill a person of ordinary firmness from continuing to engage in that activity," and

- the presence of a substantial motivating factor, on the part of the defendants, to respond to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). The Plaintiff has pled facts that would indicate satisfaction of each element.

B. First Element: The Existence of a Constitutionally Protected Activity

The threshold issue is whether the retaliatory act, termination of employment, related to a constitutionally protected activity. The Defendants argue that Mr. Stephens' activity, the filing of a grievance, was not constitutionally protected because of the absence of a "constitutional right in the grievance process." Defendants' Motion to Dismiss/Motion for Summary Judgment at p. 24 (Sept. 24, 2010). This argument is facially invalid as the Tenth Circuit Court of Appeals has squarely held that an inmate's filing of grievances against prison officials is a "constitutionally protected activity" for purposes of a retaliation claim. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). The Defendant's contrary argument is based on confusion over the relative importance of a liberty interest in claims involving

due process under the Fourteenth Amendment and the right to petition for redress of grievances under the First Amendment.

The Court may assume *arguendo*, as the Defendants argue, that there is no liberty interest in utilization of a prison's grievance process. *See supra* p. 25. This assumption, however, would be immaterial on the validity of a retaliation claim.

The Tenth Circuit Court of Appeals has held that the absence of a liberty or property interest would be fatal to a claim involving procedural due process, but would be irrelevant to a claim involving free speech. *Owens v. Rush*, 654 F.2d 1370, 1379 (10th Cir. 1981). The distinction led the court to hold that a claim of retaliation for the exercise of first amendment rights was not subject to dismissal notwithstanding the absence of a property interest.[20] As a result, the first amendment would forbid retaliation against Mr. Stephens for the filing of a grievance even if Mr. Stephens had no liberty interest in the grievance process.[21]

The Defendants also argue that the Plaintiff lacks "'a property or liberty interest in prison employment.'" Defendants' Motion to Dismiss/Motion for Summary Judgment at

---

[20]     *Owens v. Rush*, 654 F.2d at 1379; *see Allah v. Seiverling,* 229 F.3d 220, 224 (3d Cir. 2000) ("Retaliation may be actionable . . . even when the retaliatory action does not involve a liberty interest." (citations omitted)); *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000) (stating that "[r]etaliation is a potential wrong . . . even when [the retaliatory act] does not involve a liberty or property interest" (citation omitted)); *National Association of Radiation Survivors v. Walters*, 589 F. Supp. 1302, 1324 (N.D. Cal. 1984) ("by contrast to the procedural due process claim, no property or liberty interest need be established as a prerequisite to asserting a First Amendment claim" (citation omitted)), *rev'd on other grounds*, 473 U.S. 305 (1985).

[21]     *See Muniz v. Richardson*, 371 Fed. Appx. 905, 909 (10th Cir. Mar. 31, 2010) (unpublished op.) ("Prison officials . . . may not retaliate against prisoners for filing grievances . . . . (citation omitted)).

p. 24 (Sept. 24, 2010) (citation omitted).  However, retaliation may be actionable even when the action "'would have been proper'" if undertaken for a different reason.  *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) (citations omitted).  As a result, the Defendants' alleged retaliation would be actionable even if Mr. Stephens had no constitutional right to maintain his job in the law library.

      C.      Second Element: Action by the Defendant that Would Chill a Person of Ordinary Firmness from Continuing to Engage in that Activity

One can also reasonably infer from the allegations that the firing could reasonably have discouraged the filing of future grievances against Mr. Monday or other prison officials. Thus, the Plaintiff's allegations would also satisfy the second element of the retaliation claim. *See supra* p. 25.

      D.      Third Element:  The Presence of a Substantial Motivating Factor, on the Part of the Defendants, to Respond to the Plaintiff's Exercise of Constitutionally Protected Conduct

The third element addresses the presence of a retaliatory motive on the part of the defendants.  *See supra* p. 25.  Here too the Plaintiff's allegations are sufficient to satisfy this element at the pleading stage.

It is true that "[m]ere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1991).  Thus, Mr. Stephens had a duty to "allege specific facts showing retaliation because of the exercise of [his] constitutional rights." *Id.*

The Plaintiff complied with this requirement.  Mr. Stephens alleged in the complaint that:

- he had expressed dissatisfaction to Mr. William Monday about a subordinate's unauthorized dietary substitutions and resulting physical harm,[22]

- the same day, the prison psychologist wrote to Mr. Monday and recommended removal of Mr. Stephens from his job in the law library based on "a false, misleading record of [their] meeting,"[23] and

- as of this time, Mr. Stephens had obtained "exceptional" ratings for his job as an inmate research assistant for the prior fifteen months.[24]

These specific factual allegations, if believed, could create a reasonable inference of a retaliatory motive on the part of some defendants. *See Ferguson v. New Mexico Department of Corrections*, 21 Fed. Appx. 822 (10th Cir. Oct. 17, 2001) (unpublished op.).[25]

III.    Sufficiency of the Evidence for a Genuine Issue of Material Fact: Summary Judgment

To prevail on the claim, Mr. Stephens "must prove that 'but for' the retaliatory motive, the incident[] to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990) (citation omitted).  Viewed in the light

---

[22]    Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 13 ¶ 47 (Feb. 18, 2010).

[23]    Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 13 ¶ 46, p. 14 ¶ 49 (Feb. 18, 2010).

[24]    Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 14 ¶ 50 (Feb. 18, 2010).

[25]    The issue in *Ferguson* was similar.  A state prisoner sued under Section 1983, claiming that officials had reacted to his filing of grievances by putting him in administrative segregation "'in an attempt to cover up harassment and retaliation.'"  *Ferguson v. New Mexico Department of Corrections*, 21 Fed. Appx. at 823 (quoting the complaint).  The federal district court dismissed the retaliation claim under Rule 12(b)(6), and the Tenth Circuit Court of Appeals reversed. *Id.*, 21 Fed. Appx. at 824.  In reversing, the appeals court explained that "[a] liberal reading of the complaint indicate[d] that [the prisoner] [had] sufficiently pled that the administrative proceeding was a retaliatory act for filing grievances in violation of [his] First Amendment rights."  *Id.* (footnote omitted).

most favorable to Mr. Stephens,[26] the evidence in the form of his verified complaint[27] would indicate satisfaction of this test.

"Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence." *Id*. at 949. However, circumstantial evidence would suggest a retaliatory motive behind Mr. Monday's termination of the Plaintiff from his job in the prison law library.

Mr. Stephens complained to Mr. Monday on July 1, 2009, about health problems attributable to unauthorized dietary substitutions by the kitchen supervisor.[28] The same day, Mr. Monday received a memorandum from the prison psychologist. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 3 at p. 1 (June 23, 2010). There the psychologist recommended removal of Mr. Stephens from his job in the law library because of concerns that he was delusional. *Id*. According to the sworn complaint, the psychologist's recommendation had been based on "a false, misleading record" of the meeting with Mr. Stephens. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 13 ¶ 46, p. 23 (Feb. 18, 2010). Nonetheless, Mr. Monday

---

[26]     *See supra* p. 6.

[27]     Because the complaint was verified, the document should be treated as an affidavit. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 23 (Feb. 18, 2010); *see Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*).

[28]     Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 13 ¶ 47, p. 23 (Feb. 18, 2010); Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 11 at p. 1 (June 23, 2010).

told Mr. Stephens the next day that he could no longer work in the law library.[29]  Mr. Stephens adds under oath that until his firing, each DOC evaluation of his work as an inmate research assistant "had been rated as exceptional" over the prior fifteen months.  *Id*. at p. 14 ¶ 50, p. 23; *see supra* pp. 27-28.  Together, this evidence would create a reasonable inference of a retaliatory motive on the part of some defendants.[30]

Viewed as a whole, the summary judgment record would permit a reasonable factual finding of retaliation.  The permissibility of that finding is fatal to the Defendants' argument for summary judgment.

## CLAIM INVOLVING INADEQUATE
## MEDICAL CARE: SUMMARY JUDGMENT

According to Mr. Stephens, prison officials were deliberately indifferent to his ailments.  *See supra* pp. 1-2.  The Defendants are entitled to summary judgment based on the absence of evidence involving deliberate indifference to Mr. Stephens' medical condition.[31]

---

[29]    Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 14 ¶ 49, p. 23 (Feb. 18, 2010); *see* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 11 at p. 1 (June 23, 2010) (the request to staff referred to in the complaint).

[30]    *See Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990) (holding that circumstantial evidence, including suspicious timing of the adverse action, could create a reasonable inference of a retaliatory motive).

[31]    The Defendants also contend that the Plaintiff has failed to exhaust administrative remedies on this claim.  Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 6-11 (Sept. 24, 2010).  The Court need not address the exhaustion defense because the Plaintiff lacks evidence of deliberate indifference to his medical condition.

## I.   Application of the Summary Judgment Test

Deliberate indifference is an element of the Plaintiff's *prima facie* case.  *See Johnson v. Mullin*, 422 F.3d 1184, 1185 (10th Cir. 2005) (stating that "deliberate indifference to [the plaintiff's] medical needs" was "an essential element of his case").  Thus, the Defendants need only produce evidence negating an essential element of the claim or show that the Plaintiff lacks evidence to carry his burden.  *See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  Once the Defendants satisfy their burden of production, the Plaintiff incurs a duty to present evidence creating "an inference of the existence of each element essential to the case with respect to which [he] has the burden of proof."  *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (citations omitted).  In the absence of such evidence, the Defendants would be entitled to summary judgment.  *See id.*; *see supra* p. 7.

## II.   Standard for Violation of the Eighth Amendment

Deliberate indifference to a prisoner's medical needs is actionable under Section 1983.  *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  A prison official violates the Eighth Amendment when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health.  *Farmer v. Brennan*, 511 U.S. at 834.

## III.   The Defendants' Entitlement to Judgment as a Matter of Law

According to Mr. Stephens, Justin Jones, Genese McCoy, Donna Laymon, Marvin Vaughn, Mary Stebens, and Dr. Cuong Pham provided insufficient medical care for:

- "debilitating" dizziness, loss of balance, "seizure problems" and "uncontrolled eye movements,"

- "swelling and infection" in the "right palate," and

- "severe, bloody diarrhea."

Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 9-13, 19-20 (Feb. 18, 2010). Liberally construed, the Plaintiff's allegations suggest culmination of his symptoms in January 2010 with an abdominal hernia. *See id.* at p. 17 (alleging transportation to a hospital for abdominal hernia repair surgery in January 2010).

The Defendants do not question the seriousness of Mr. Stephens' medical condition, but urge an absence of evidence involving deliberate indifference. Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 16-20 (Sept. 24, 2010). The Defendants are correct.

Mr. Stephens requested medical care and underwent an examination on March 7, 2009, for dizziness and a headache.[32] Dr. Gadberry prescribed medication for both symptoms.[33]

---

[32]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 3-4, Exh. 19b at p. 24 (June 23, 2010).

[33]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 3-4, Exh. 19b at pp. 24, 37 (June 23, 2010).

On March 10, 2009, Dr. Cuong Pham examined the Plaintiff for "eye fluttering" and feelings of "electric shock" on the back of the head. Dr. Pham found no abnormalities, but ordered weekly blood pressure checks.[34]

Dr. Gadberry conducted another examination on March 11, 2009, for complaints of pain, swelling and drainage from the right palate, fluttering eyes, and persistent dizziness even with the medication that he had ordered four days earlier.[35] The physician ordered a "CT scan" of Mr. Stephens' "head/sinuses/mandible/maxilla," but discontinued the medication for dizziness.[36]

Mr. Stephens sought an appointment on March 31, 2009, to discuss his diet.[37] Dr. Gadberry examined the Plaintiff on April 4, 2009, and ordered multiple blood tests.[38]

On April 8, 2009, the laboratory results reflected normalcy of the blood except for elevation of the cholesterol and triglyceride levels.[39]

---

[34]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 4-5, Exh. 19b at pp. 23, 37 (June 23, 2010).

[35]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 5-6, Exh. 19b at pp. 22-23 (June 23, 2010).

[36]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 7, Exh. 19b at p. 22 (June 23, 2010).

[37]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 8 (June 23, 2010).

[38]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 9-10, Exh. 19b at pp. 20-21, 36 (June 23, 2010).

[39]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 9, Exh. 19b at pp. 47-48 (June 23, 2010).

The Plaintiff's "CT scan" on April 24, 2009, revealed "no acute intracranial pathology."[40]

On May 22, 2009, Dr. Gadberry again examined Mr. Stephens and discussed the laboratory and "CT scan" results.[41] The Plaintiff refused medication for his high cholesterol.[42]

On June 26, 2009, Dr. Pham examined the Plaintiff after complaints of "severe loose liquid stools."[43] The physician noted that Mr. Stephens was taking antibiotics for a dental issue and opined that the diarrhea could have been caused by one of the antibiotics.[44] The Plaintiff was encouraged to drink less milk and given two medications.[45]

---

[40]   Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 9, Exh. 19b at p. 69 (June 23, 2010).

[41]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 9, Exh. 19b at p. 19 (June 23, 2010).

[42]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 9, Exh. 19b at p. 19 (June 23, 2010).

[43]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 9-10 (June 23, 2010).

[44]   *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 9-10, Exh. 19b at pp. 18-19 (June 23, 2010).

[45]   Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 9-10, Exh. 19b at pp. 18-19, 35 (June 23, 2010).

Mr. Stephens returned for medical care on June 30, 2009, with continued complaints of diarrhea, now with the presence of blood.[46]  Though Dr. Pham did not see evidence of blood, he ordered laboratory work and ordered Mr. Stephens to "lay-in" pending the results.[47]

On July 1, 2009, the laboratory results: (1) reflected the absence of blood, ova, or parasites in the stool, and (2) were normal except for a trace amount of protein and slight elevation in "absolute neutorphils" and "hematocrit."[48]

Mr. Stephens continued to complain about a bloody stool and underwent another examination on July 6, 2009.[49]  Dr. Pham found no abnormalities and referred the Plaintiff to Dr. Gadberry for a second opinion.[50]

---

[46]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 10-11, Exh. 19b at p. 35 (June 23, 2010).

[47]     Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 10-11, Exh. 19b at p. 18 (June 23, 2010).

[48]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 12, Exh. 19b at pp. 41-45 (June 23, 2010).

[49]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 12-13 (June 23, 2010).

[50]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 12-13, Exh. 19b at pp. 16, 35 (June 23, 2010).

On July 13, 2009, the Plaintiff reported some improvement after reducing his intake of milk.[51]  Nevertheless, Dr. Pham ordered a test to measure the count of Carcinoembryonic Antigens.[52]  The results were within normal limits.[53]

Dr. Gadberry examined the Plaintiff on July 18, 2009.[54]  The physician noted a loss of ten pounds and ordered "Flat/Upright abdominal x-rays," a "colonoscopy consult," "Metamucil capsules," and "increased fluid intake."[55]

X-rays taken four days later revealed "a normal exam with no active or acute process."[56]

---

[51]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 14, Exh. 19b at pp. 15-16 (June 23, 2010).

[52]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 14, Exh. 19b at pp. 15, 34 (June 23, 2010).

[53]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p.15, Exh. 19b at p. 40 (June 23, 2010).

[54]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 15-18, Exh. 19b at pp. 13-15, 34 (June 23, 2010).

[55]    Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 15, 18, Exh. 19b at pp. 13-15 (June 23, 2010).

[56]    Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 18 (June 23, 2010).

On August 13, 2009, Mr. Stephens underwent a colonoscopy.[57] The results were "normal except [for] some internal hemorrhoids."[58] The Plaintiff was encouraged to increase his fiber and prescribed Metamucil capsules.[59]

Dr. Gadberry reviewed the laboratory results with Mr. Stephens on September 5, 2009.[60]

Mr. Stephens was again examined on September 20, 2009, to address the previous complaints involving seizures.[61] Dr. Gadberry regarded the results as "normal."[62] However,

---

[57]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 18-19, Exh. 19b at pp. 63-65 (June 23, 2010).

[58]     Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 18-19, Exh. 19b at pp. 63-65 (June 23, 2010).

[59]     Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 18-19, Exh. 19b at pp. 63-65 (June 23, 2010).

[60]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19b at p. 12 (June 23, 2010).  The medical transcription reads "9-5-10."  The date appears to reflect a scrivener's error.  *Id.*, Exh. 19a at pp. 19-20.

[61]     *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 20-21, Exh. 19b at pp. 11-12 (June 23, 2010).

[62]     Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 21, Exh. 19b at p. 11 (June 23, 2010).

the Plaintiff was concerned about "heavy metals" in the prison food.[63]  As a result, the physician ordered further blood tests.[64]  The results for "heavy metals" was normal.[65]

The Plaintiff sought medical treatment for a sore throat on November 12, 2009, and a nurse examined him the next day.[66]  Mr. Stephens was prescribed Acetaminophen, Guaifenesin, and CTM.[67]

He next sought treatment on December 5, 2009, for constipation and weight loss.[68]  Dr. Pham conducted an examination and found the relevant benchmarks to be within normal limits.[69]  The physician ordered weekly weight checks, use of Metamucil, and restricted consumption of beans.[70]

---

[63]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 21, Exh. 19b at p. 11 (June 23, 2010).

[64]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 20-21, Exh. 19b at pp. 11, 33 (June 23, 2010).

[65]    Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 21, Exh. 19b at p. 39 (June 23, 2010).

[66]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 22-23, Exh. 19b at p. 10 (June 23, 2010).

[67]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 22, Exh. 19b at p. 10 (June 23, 2010).

[68]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 23 (June 23, 2010).

[69]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 23-24, Exh. 19b at p. 33 (June 23, 2010).

[70]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 24, Exh. 19b at p. 33 (June 23, 2010).

On December 15, 2009, the Plaintiff complained of a knot in his stomach.[71] Authorities scheduled an examination by Dr. Pham, but Mr. Stephens failed to attend.[72]

Dr. Pham was able to examine Mr. Stephens on December 17, 2009.[73] The physician found an "ill-defined 'lump' over the umbilicus approximately 2 to 3 cm," noting the possibility of a "fat deposit" and ordering Mr. Stephens to continue to follow up.[74]

On December 30, 2009, Dr. Gadberry provided a second opinion on the "lump," examining the Plaintiff and ordering a surgery consultation for a hernia.[75]

Mr. Stephens was transported to a hospital for the surgery consultation on January 6, 2010.[76] The Plaintiff was assessed with an "incarcerated umbilical hernia," which was surgically repaired on January 13, 2010.[77]

---

[71]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 24 (June 23, 2010).

[72]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 24, Exh. 19b at p. 9 (June 23, 2010).

[73]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 25, Exh. 19b at p. 8 (June 23, 2010).

[74]    Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 25, Exh. 19b at p. 8 (June 23, 2010).

[75]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 25-26, Exh. 19b at pp. 6, 31 (June 23, 2010).

[76]    *See* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 26-27 (June 23, 2010).

[77]    Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at p. 27, Exh. 19b at pp. 4, 55-59 (June 23, 2010); *see supra* p. 32.

With this undisputed record of medical care, no reasonable person could find deliberate indifference.

In the complaint, Mr. Stephens referred to multiple administrative allegations about the insufficiency of diagnostic testing and the referrals to outside specialists.[78] These references do not create a triable fact-issue on the element of deliberate indifference.

For example, the record reflects numerous tests, including an x-ray, CT scan, various blood tests, and a colonoscopy. *See supra* pp. 33-38. Mr. Stephens may question the sufficiency of these tests, but liability under Section 1983 cannot be based solely on disagreements about the appropriate diagnostic measures. *See*, *e.g.*, *Smart v. Villar*, 547 F.2d 112, 113-14 (10th Cir. 1976).

The same is true for Mr. Stephens' dissatisfaction with the limited opportunities for specialized care. *See supra* p. 40. On some occasions, the Tenth Circuit Court of Appeals has broadly stated that refusal to provide specialized care cannot constitute deliberate indifference to serious medical needs.[79] But the same court has elsewhere held that refusal to refer a prisoner to a medical specialist could reflect deliberate indifference to medical needs. *E.g.*, *Oxendine v. Kaplan*, 241 F.3d 1272, 1278-79 (10th Cir. 2001).

---

[78]     Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 9 ¶ 30, p. 10 ¶¶ 31, 34, p. 15 ¶ 56, pp. 15-16 ¶ 57 (Feb. 18, 2010).

[79]     *E.g.*, *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (stating that a prisoner's claim involving denial of "treatment by a specialist is . . . insufficient to establish a constitutional violation'" (citations omitted)).

The court reconciled the two lines of authority in *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006). There the court held that "[a] claim is . . . actionable only in cases where the need for . . . referral to a medical specialist is obvious." *Self v. Crum*, 439 F.3d at 1232. The court added:

> [O]bviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.*, a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.*, a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Id*. (citations omitted). These circumstances are absent, and the Plaintiff lacks evidence of an obvious need for specialized care.

In the complaint, Mr. Stephens singled out the refusal to refer him to a specialist for four months following an examination by Dr. Gadberry on March 7, 2009. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 9 ¶¶ 29-30, p. 10 ¶¶ 31, 34 (Feb. 18, 2010). But the undisputed evidence of treatment during this four-month period included:

- five examinations by Dr. Gadberry,

- consultation with another physician, Dr. Jeffery Troutt,

- five examinations by Dr. Cuong Pham,

- an examination by a nurse,

- weekly blood pressure checks to rule out hypertension,

- abdominal x-rays which ultimately proved to be normal,

- laboratory tests including two complete metabolic profiles, carcinoembryonic antigen, two complete blood counts, two thyroid stimulating hormones, fasting lipid panel, liver function test, and urinalysis, all of which proved to be normal except for a trace amount of protein and elevated cholesterol, triglyceride, neutorphils, and hematocrit,

- a CT scan which ultimately ruled out intracranial pathology, and

- prescriptions for headaches (Midrin) and dizziness (Antivert).[80]

The medical record does not reflect an obvious need for specialized care in light of the undisputed record of treatment provided at the correctional center. *See supra* pp. 31-35, 40-42. With this record of treatment, the Court could not find deliberate indifference on the part of Justin Jones, Genese McCoy, Donna Laymon, Martin Vaughn, Mary Stebens, or Dr. Cuong Pham even if one or more of them should have ordered referral to a specialist during the four-month period described in the complaint.

Even when viewed in the light most favorable to Mr. Stephens, the evidence would not support a finding of deliberate indifference to serious medical needs. Accordingly, the Defendants are entitled to summary judgment on this claim.

---

[80]     *See supra* pp. 31-34; *see also* Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 19a at pp. 3-18, Exh. 19b at pp. 13-24, 32-36, 38-47 (June 23, 2010).

## CLAIM INVOLVING DENIAL OF COURT
## ACCESS:  DISMISSAL/SUMMARY JUDGMENT

The Plaintiff also alleges denial of court access through opening of his legal mail, deprivation of legal material, delay in providing internal information, and misuse of the administrative process.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 11, 14, 17-19, 21 (Feb. 18, 2010).  The Defendants are entitled to dismissal or summary judgment on all of these claims.

I.     Opening of Legal Mail and Deprivation of Legal Materials

Mr. Stephens alleges interference with court access through the opening of his legal mail and deprivation of legal materials.  *Id.* at pp. 11, 14, 17-18.  The Defendants seek dismissal based on a failure to allege an actual injury.   Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 22-23 (Sept. 24, 2010).  The Court should grant the motion and dismiss these claims.

In determining whether dismissal is appropriate, the Court considers whether the Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff.

*See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (citation omitted).

The Fourteenth Amendment guarantees Mr. Stephens "the right to 'adequate, effective, and meaningful' access to the courts." *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (citations omitted). This right is violated when prison officials hinder an inmate's effort to construct a nonfrivolous appeal or claim. *See Green v. Johnson*, 977 F.2d 1383, 1389-90 (10th Cir. 1992). However, to prevail on a claim involving denial of court access, the Plaintiff must show an "actual injury."[81]

Mr. Stephens has not alleged facts reflecting a plausible claim of actual injury. While he uses the term "actual injury,"[82] he has not described any actual prejudice by the screening of his legal mail or deprivation of legal materials.

For the claim involving access to the courts, Mr. Stephens referred in the complaint to Paragraphs 17-20, 25-26, 35, 37-40, 42, 52-53, 59, and 67. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 18 ¶ 69 (Feb. 18, 2010). Among these, the only paragraphs discussing actual injury are Numbers 40 and 52. Paragraph 40 stated:

---

[81]     *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2003) (holding that to prevail on a claim involving court access, the plaintiff "'must show that any denial or delay of access to the court prejudiced him in pursuing litigation'" (citation omitted)).

[82]     *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 11, 14, 18 (Feb. 18, 2010); Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at pp. 12, 28 (Dec. 3, 2010).

On June 23, 2009, Plaintiff submitted a RTS to Defendant Carrie Bridges on the issue of actual injury and legal prejudice caused by the Warden's procedure, WSKCC-030117-01 § IV.B.5, being enforced by Defendant Jackie Perkins, requiring Plaintiff submit his outgoing legal mail with unsealed mailing envelopes for pre-screening and review by Defendant Jackie Perkins before U.S. mailing, allegedly to determine "correct and mandatory requirements concerning the filing of court documents".

*Id.* at pp. 11-12 ¶ 40.  Paragraph 52 provided:

On July 9, 2009, Plaintiff submitted a grievance, No. 09-34, on the paragraph 40 issue of actual injury and legal prejudice caused by Warden's procedure, WSKCC-030117-01 § IV.B.5, that chilled, hindered, delayed, and/or deprived Plaintiff of timely, adequate access to the courts caused by Defendant Jackie Perkins' reading of Plaintiff's legal mail, providing opportunity for DOC officials, DOC officers, and DOC staff to subvert Plaintiff's opportunity to timely and adequately present legal claims to the courts.

*Id.* at pp. 14-15 ¶ 52.

These statements do not tie the alleged screening of mail or limits on legal material to an impediment against assertion of a claim in court.  As a result, Mr. Stephens' conclusory allegations in Paragraphs 40 and 52 do not suffice under Rule 12(b)(6).  *See Parkhurst v. Uphoff*, 108 F.3d 1388, 1997 WL 139766, Westlaw op. at 1 (10th Cir. Mar. 27, 1997) (unpublished op.).[83]

---

[83]    In *Parkhurst v. Uphoff*, the inmate-plaintiff alleged:

"The violations of plaintiffs' rights to access to the courts and to petition for redress of grievances, detailed above (regarding delayed access to legal materials and disastrous advice from legal assistants), has [sic] prejudiced numerous of the plaintiffs - both named plaintiffs and unnamed members of the plaintiff class - in various court actions, both criminal and civil."

*Parkhurst v. Uphoff*, 108 F.3d 1388, 1997 WL 139766, Westlaw op. at 1 (10th Cir. Mar. 27, 1997) (unpublished op.) (quoting the complaint).  The Tenth Circuit Court of Appeals upheld dismissal for failure to state a valid claim, reasoning that "[t]his sweeping allegation of injury [was] too

II.     Claim Involving Delay of Internet Information

        The claim involving delay of internet information is also invalid as a matter of law.

        A.      Background

        In 2008, Mr. Stephens apparently appealed the denial of habeas relief on an issue

involving his competency at trial.[84]  Civil Rights Complaint-Pursuant to Title 42 § 1983 at

p. 7 (Feb. 18, 2010).  In the appellate order, the court referred in a footnote to Mr. Stephens'

use of medications, citing a website on the internet: http://www.pdrhealth.com/home/

home.aspx.  *See id.*; *see also* Brief in Support of Plaintiff's Motion for Summary Judgment,

Exh. 22 at p. 1 (Sept. 24, 2010).[85]  Mr. Stephens alleges that he had requested rebuttal

internet information: (1) orally on October 30, 2008, and (2) in writing on February 23, 2009.

Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 7, 9 (Feb. 18, 2010).  He allegedly

did not receive the requested internet information until March 16, 2009.  Plaintiff's Response

with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment

---

conclusory to demonstrate that the denial of legal materials [had] actually hindered plaintiffs' efforts
to pursue any nonfrivolous claim."  *Id.* (citation omitted).

[84]     Mr. Stephens did not identify the nature of the prior proceedings.  *See* Civil Rights
Complaint-Pursuant to Title 42 § 1983 at p. 7 (Feb. 18, 2010).  But Mr. Stephens stated that the
Tenth Circuit Court of Appeals had denied a certificate of appealability and dismissed an appeal.
*Id.*  The reference to a certificate of appealability suggests that the decision involved an appeal from
the denial of habeas relief.  *See* 28 U.S.C. § 2253(c)(1)(A) (2006) (requiring a certificate of
appealability to appeal from a final order is a state prisoner's habeas action).

[85]     The Plaintiff incorporated this exhibit in his response to the Defendants' dispositive motion.
Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for
Summary Judgment [Doc. 66] at p. 5 (Dec. 3, 2010) ("Plaintiff incorporates by reference his filed
pleadings, supported by authentic evidence.  *See* Plaintiff's EXHIBIT 1 through EXHIBIT 44.").

[Doc. 66] at p. 2 n.1 (Dec. 3, 2010). According to the Plaintiff, the delay resulted in denial of his right to court access. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 19 (Feb. 18, 2010).

B.    The Defendants' Arguments

The Defendants argue that the claim is unexhausted and that the Plaintiff has not suggested facts which would reflect an actual injury. Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 6-11, 20-22 (Sept. 24, 2010).

C.    Separate Analysis of the Oral and Written Requests for Internet Information

Meaningful analysis of the issue requires separate consideration of the Plaintiff's two alleged requests for internet information. According to the Plaintiff, his first request for the internet information was orally made on October 30, 2008. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 7 (Feb. 18, 2010). His second request was allegedly made in writing on February 23, 2009. *Id.* at p. 9.

D.    The Claim Involving an Oral Request for Internet Information

For the claim involving the oral request, the Defendants are entitled to summary judgment.

The parties' evidence reflects administrative complaints stemming from the delay in providing internet information. But, none of this documentation reflects a grievance or administrative appeal relating to delays involving the alleged oral request on October 30, 2008. For example, the sole grievance on the issue relates to delay in providing internet

information in response to his written request to staff. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 2 at p. 13 (June 23, 2010). There is no mention in the grievance to an oral request in October 2008 for internet information.[86] Similarly, the eventual administrative appeal contained no mention of an oral request for internet information in October 2008. *See id*., Exh. 2 at pp. 15-16. Mr. Stephens has provided no other evidence involving a grievance or administrative appeal over a delay stemming from the oral request for internet information in October 2008. As a result, the claim is unexhausted as a matter of law[87] and the Defendants are entitled to summary judgment with respect to the oral request for internet information.

E.      The Claim Involving a Written Request for Internet Information

For the claim involving the written request, the Defendants are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6).

As noted above, Mr. Stephens has based the claim in part on written requests beginning on February 23, 2009. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 9 (Feb. 18, 2010). But, Mr. Stephens points out in the complaint that the Tenth Circuit Court of Appeals had denied a certificate of appealability and a petition for rehearing over two months earlier. *See id*. at pp. 7-8 (stating that the appellate court had denied a certificate of

---

[86]      Instead, Mr. Stephens stated in the grievance that he had orally requested the internet information on February 19, 2009. Special Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exh. 2 at p. 13 (June 23, 2010).

[87]      *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the Prison Litigation Reform Act] for failure to exhaust his administrative remedies." (citation omitted)).

appealability on October 22, 2008, and denied rehearing on December 4, 2008). In light of the prior dismissal of his appeal and denial of rehearing, Mr. Stephens has not alleged any facts that would have suggested an ability to resurrect his habeas claim even with immediate delivery of the internet information requested on February 23, 2009. The absence of such factual allegations would leave the Court unable to infer an actual injury from the complaint. Under these circumstances, the Defendants are entitled to dismissal of the claim involving delay after the written request for internet information.[88]

F.    Summary

The evidence is undisputed regarding a failure to exhaust administrative remedies on a claim involving delay after the oral request on October 30, 2008. As a result, the Defendants are entitled to summary judgment on this portion of the claim.

The Plaintiff's allegations would not support a plausible claim of actual injury with respect to delay emanating from the written request on February 23, 2009. As a result, this portion of the claim would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

---

[88]    *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (holding that an inmate-plaintiff's claim involving deprivation of court access was not sufficient because the alleged interference had taken place "well after" dismissal of the two underlying lawsuits; *see also supra* pp. 44-45.

III.    Claims Involving the Grievance Procedures (First and Fourteenth Amendments): Dismissal

Mr. Stephens also alleges violation of his right to petition and deprivation of due process through inadequacies in the grievance procedures. Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 18-19, 21 (Feb. 18, 2010). The Defendants are entitled to dismissal of these claims.

A.    First Amendment

A right to court access is grounded in part on the First Amendment right to petition for redress of grievances.[89] But, as discussed above, a claim involving denial of court access is cognizable only if the plaintiff has experienced an actual injury. *See supra* p. 44.

Mr. Stephens has alleged multiple deviations from DOC policy in the grievance process and an intent to prevent exhaustion of administrative remedies as required by federal and state law. Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 10 ¶¶ 31, 33, p. 14 ¶ 51, pp. 15-16 ¶ 57, p. 17 ¶ 63, p. 18 ¶ 67 (Feb. 18, 2010). But the Plaintiff has not included any allegations tying the alleged irregularities to an inability to ultimately bring a court action.

The Tenth Circuit Court of Appeals addressed a similar issue in *Hornsby v. Jones*, 188 Fed. Appx. 684 (10th Cir. June 26, 2006) (unpublished op.). There an Oklahoma prisoner sued prison officials under Section 1983, claiming in part that their failure to respond to

---

[89]    *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984) ("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts" (citation omitted)); *see also infra* p. 51.

administrative grievances had resulted in a violation of the First Amendment. *See Hornsby v. Jones*, 188 Fed. Appx. at 687, 690. The Tenth Circuit Court of Appeals acknowledged that "[t]he constitutional right to petition the government for redress of grievances include[d] a reasonable right of access to the courts." *Id.* at 690 (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984)); *see supra* note 90. But the claim was still deficient because of the failure to allege any prejudice. *Hornsby v. Jones*, 188 Fed. Appx. at 690. The court reasoned that the inmate's "'invocation of the judicial process indicate[d] that the prison [had] not infringed his First Amendment right to petition the government for a redress of grievances.'" *Id.* (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).

*Hornsby v. Jones* is persuasive in the present fact-pattern. Regardless of the alleged irregularities in the grievance process, Mr. Stephens was ultimately able to bring the present action for all of his underlying claims.

He did fail to exhaust the claims involving inadequacy of the diet, failure to timely respond to a verbal request for internet information, and breach of confidentiality. *See supra* pp. 5-23, 47-48. But, as discussed above, these claims are subject to the exhaustion requirement because of failures by Mr. Stephens rather than any irregularities on the part of prison officials. *See supra* pp. 5-23, 47-48. Thus, Mr. Stephens has not alleged any facts that would suggest a plausible finding of actual injury through the alleged irregularities in the administrative process.

B.    Fourteenth Amendment

The same is true of the related claim for denial of due process.

Like the First Amendment, the Fourteenth Amendment's Due Process Clause protects a prisoner's right to court access.  *See supra* p. 44.  But here too the Plaintiff must allege facts indicating actual injury. *See supra* p. 44.  In the absence of interference with court access, alleged errors in the handling of grievances would not implicate the Fourteenth Amendment's Due Process Clause.[90]  In light of the absence of allegations involving actual injury, discussed above, the Defendants are entitled to dismissal of the due process claims based on irregularities in the administrative process.  *See supra* pp. 44-45, 48-49.

CLAIM INVOLVING FORCED PARTICIPATION
IN A PRISON PROGRAM:  DISMISSAL

Mr. Stephens alleges a denial of due process and equal protection through forced participation in a prison program.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 8, 20 (Feb. 18, 2010).  According to the Plaintiff, he lost an opportunity to earn credits because of the need to complete the program before he had served 85% of his prison sentence. *Id.* at p. 20.  Mr. Stephens also alleges that "similarly situated DOC prisoners were

---

[90]    *See Walters v. Corrections Corporation of America*, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.) (holding that a prisoner's "alleged denial of access to state administrative grievance procedures" would not have "resulted in a violation of his constitutional rights"); *Rauh v. Ward*, 112 Fed. Appx. 692, 693-94 (10th Cir. Oct. 14, 2004) (unpublished op.) (upholding dismissal of a prisoner's Section 1983 claim involving denial of access to the administrative grievance procedure in light of his access to the courts); *see also Davis v. Oklahoma Department of Corrections*, 2007 WL 869650, Westlaw op. at 1, 11-12 (W.D. Okla. Mar. 20, 2007) (unpublished op.) (holding that hindrance of the ability to exhaust administrative remedies would not implicate a prisoner's due process rights).

allowed the opportunity to receive such earned credits . . . ." *Id.* The Defendants seek dismissal of the due process claim, but do not address the case of action for denial of equal protection.

The Section 1983 claim is presumably rooted in Oklahoma's prohibition on accumulation of earned credits until completion of 85% of a sentence for robbery with a firearm. *See* Okla. Stat. tit. 21 § 13.1 (2001). The Plaintiff appears to argue that because he had to complete the program before he could accumulate credits, the Defendants have deprived him of the opportunity to shorten his sentence through participation. But the Plaintiff has no constitutional right to participate in prison programs[91] even when it could result in earlier release.[92] In these circumstances, the Defendants are entitled to dismissal of the due process portion of this claim.

The Defendants do not address the merits of Mr. Stephens' related equal protection claim. As a result, this claim should survive the dispositive motion.

---

[91]    *See Joseph v. United States Federal Bureau of Prisons*, 232 F.3d 901, 2000 WL 1532783, Westlaw op. at 2 (10th Cir. Oct. 16, 2000) (unpublished op.) ("'Prisoners have no constitutional right to educational ... opportunities during incarceration.'" (citations omitted)).

[92]    *See Matelsky v. Gunn*, 15 Fed. Appx. 686, 688-89 (10th Cir. July 19, 2001) (unpublished op.) (holding that a prisoner had no liberty interest in the participation in a prison program for the purpose of earning credits toward expedited release); *Young v. Jones*, 2007 WL 4287631, Westlaw op. at 2-3 (W.D. Okla. Dec. 5, 2007) (unpublished report and recommendation by magistrate judge) (holding that a liberty interest was not affected when an inmate alleged that he could not earn future credits because of his program assignment), *adopted*, 2007 WL 4287631, Westlaw op. at 1 (W.D. Okla. Dec. 5, 2007) (unpublished order by district judge).

THE PARTICIPATION OF VARIOUS DEFENDANTS: DISMISSAL

The Defendants also seek dismissal on grounds that Mr. Stephens has failed to allege personal participation for Justin Jones, Genese McCoy, Marvin Vaughn, Donna Laymon, or Joe Owens. Defendants' Motion to Dismiss/Motion for Summary Judgment at pp. 12-16 (Sept. 24, 2010).

The claims that would otherwise survive involve:

- denial of equal protection through compulsory participation in a prison program and

- retaliation through termination of prison employment.

On these claims, Justin Jones, Genese McCoy, Marvin Vaughn, Donna Laymon, and Joe Owens are entitled to dismissal in their personal capacities.

I.     The Requirements of Personal Participation

Personal participation is necessary for individual liability under Section 1983.[93] *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim." (citations omitted)). And, in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009), the Supreme Court held that supervisors can only incur liability for their own misconduct. Under this decision, liability cannot be based on a supervisor's knowledge of wrongdoing by a subordinate. *Id.*

---

[93]     The present issue would not affect the official-capacity claims against two defendants, Justin Jones and Genese McCoy. *See Clark v. Bartling*, 2009 WL 112985, Westlaw op. at 1, 7 (W.D. Okla. Jan. 15, 2009) (unpublished op.) (stating that the defendant's "lack of personal participation would not affect the official capacity claim" (citations omitted)).

54

II.     The Remaining Allegations Against Justin Jones

Mr. Jones has been named in each of the claims that would remain under the present report.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 19-21 (Feb. 18, 2010).  Mr. Stephens argues that Justin Jones is personally liable for all of the alleged constitutional violations because he is "responsible for promulgating DOC rules, DOC policies, and DOC procedures for DOC officers, DOC officials, DOC staff, and DOC prisoners, and ensuring compliance and enforcement of such rules, policies, and procedures."  *Id.* at p. 2 (detailing duties), pp. 18-21 (listing Justin Jones as responsible for each alleged violation).  In his response, the Plaintiff argues that Mr. Jones' signature on DOC policies proves his "actual knowledge of" and allowance of "inadequate DOC procedures, unconstitutional facilities, and unconstitutional actions."  Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 22 (Dec. 3, 2010).[94]

Liberally construed, the complaint suggests allegations against Mr. Jones for promulgation of policies and a failure to supervise.  But these theories would not suffice to create liability on the part of Mr. Jones.

A.      Policy Creation

In some cases, a supervisor can incur liability when he "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a

---

[94]     Mr. Stephens also states that Mr. Jones had observed inadequacies involving the size and seating in the prison law library.  Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 23 (Dec. 3, 2010).  But these matters are not involved in the claims that would otherwise survive.

policy" which violates the federal constitution. *Dobbs v. Richardson*, 614 F.3d 1185, 1999 (10th Cir. 2010), *cert. denied*, __ U.S. __, __ S. Ct. __, 2011 WL 1529753 (U.S. Apr. 25, 2011) (No. 10-741). Even then, however, liability must be based on a causal relationship between the policy and the "constitutional harm." *Id.* And, the prisoner must show that the policy was created "with the state of mind required to establish the alleged constitutional deprivation." *Id.* (footnote & citation omitted).

Mr. Stephens has not alleged any facts that would tie the denial of equal protection or the retaliatory firing to a policy created or maintained by Mr. Jones. Thus, Mr. Jones cannot incur liability on these claims through his alleged role as a policymaker.

B.     Failure to Supervise

The complaint also suggests that Justin Jones had a duty to supervise the offending prison personnel. *See supra* p. 55. But the Plaintiff must allege actual misconduct by Mr. Jones. *See supra* p. 54 (citing *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1948 (2009)). Aside from his alleged promulgation of DOC policy, Justin Jones is not accused of active participation in any constitutional violation. *See supra* pp. 55-56. Consequently, the alleged lapses in supervision would not suffice for personal participation by Mr. Jones.

C.     Summary

In these circumstances, the Court should dismiss all of the claims against Mr. Jones in his personal capacity.

III.    The Remaining Allegations Against Donna Laymon

Mr. Stephens alleges Ms. Laymon's participation in one remaining claim, which involves the denial of equal protection through forced participation in a program called "Thinking for a Change."  *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 20 (Feb. 18, 2010).  According to the Plaintiff's allegations, Ms. Laymon's only connection to this claim is through her denial of a grievance.  *See id.* at p. 8.  This connection is insufficient for personal liability.

In *Gallagher v. Shelton*, the Tenth Circuit Court of Appeals stated:

> We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).  This decision entitles Ms. Laymon to dismissal of the claim.  Her only alleged act, denial of a grievance, would not reflect personal participation under *Gallagher v. Shelton*.

IV.    The Remaining Allegations Against Genese McCoy

Mr. Stephens implicates Ms. McCoy in the count concerning retaliation for the filing of a grievance.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 19 (Feb. 18, 2010).[95] But the allegations in the complaint would not support liability on the part of Ms. McCoy.

---

[95]    Mr. Stephens does not implicate Ms. McCoy in the claim concerning violation of equal protection through forced participation in a prison program.  *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 20 (Feb. 18, 2010).

As noted above, this claim is based on retaliatory action by Mr. Monday on July 1, 2009, involving termination of employment in the prison law library. *See supra* pp. 29-30. Thus, the present issue is whether the Plaintiff has set forth factual allegations which could reasonably implicate Ms. McCoy in this constitutional violation.

In the complaint, Mr. Stephens' only references to Ms. McCoy are in Paragraphs 5 and 33. In Paragraph 5, Mr. Stephens described Ms. McCoy's job responsibilities. Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 2-3 (Feb. 18, 2010). In Paragraph 33, Mr. Stephens alleged that Ms. McCoy had returned a grievance, unanswered, in March 2009. *Id.* at p. 10.

As discussed above, the retaliation claim is based on events beginning on July 1, 2009. *See supra* pp. 27-30. These events post-dated Ms. McCoy's return of the grievance by more than three months. *See supra* p. 58. As a result, the alleged return of the grievance in March 2009 could not have implicated Ms. McCoy in the retaliation that allegedly took place more than three months later. And there is nothing else in the complaint to suggest Ms. McCoy's involvement in the underlying facts associated with the retaliation claim. In these circumstances, the Court should dismiss the retaliation claim against Ms. McCoy in her personal capacity.

V.     The Remaining Allegations Against Marvin Vaughn

Mr. Marvin Vaughn is also identified as a defendant on the claim for retaliation.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at pp. 18-19 (Feb. 18, 2010).  But the complaint does not provide a plausible basis to extend liability to Mr. Vaughn.

Mr. Vaughn is discussed in Paragraphs 7, 41, 51, 57, 59, and 66 of the complaint.

In Paragraph 7, Mr. Stephens simply described Mr. Vaughn's responsibilities as the warden.  *Id*. at p. 3.

In Paragraphs 41 and 59, the Plaintiff described positive steps taken by Mr. Vaughn to discuss problems in the kitchen and to grant relief on multiple grievances.  *Id*. at pp. 12, 16. Obviously, Mr. Vaughn's positive actions could not serve as a basis for liability.

The Plaintiff also described Mr. Vaughn's alleged failure to respond to grievances in Paragraphs 51 and 57.  *Id*. at pp. 14-16.  These allegations involved grievances submitted on July 6 and 14, 2009.  *Id.*  As noted above, the retaliation claim is based on action taken by Mr. Monday on July 1, 2009, days before the submission of any grievance to Mr. Vaughn. *See supra* pp. 27-30.  As a result, inaction on July 6 or 14, 2009, could not have implicated Mr. Vaughn in earlier acts of retaliation.[96]

---

[96]     According to Mr. Stephens, the grievance on July 6, 2009, had involved a complaint about the events on July 1, 2009.  Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 14 (Feb. 18, 2010).  But, as discussed above, the alleged failure to respond to Mr. Stephens' grievance could not serve as a basis for personal liability.  *See supra* p. 57.

In these circumstances, the Court should dismiss the retaliation claim against Mr. Vaughn.

## VI.    The Remaining Allegations Against Joe Owens

Mr. Joe Owens is included on the equal protection claim that would otherwise remain. *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 20 (Feb. 18, 2010).  But Mr. Owens is entitled to dismissal on this claim.

Mr. Stephens described Mr. Owens as a "Unit Manager of Unit A at WSKCC" and stated only that Mr. Owens had denied a request to staff on the issue of forced participation in a prison program.  *Id.* at pp. 5, 8.[97]  This action would not reflect Mr. Owens' personal participation in the underlying constitutional violation.  *See supra* p. 57 (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).

## VII.    The Plaintiff's Argument Regarding a Right to Conduct Further Discovery

The Plaintiff asserts that the Court should decline to dismiss any of the parties until he has had a further opportunity to conduct discovery regarding the Defendants' respective roles in the underlying acts.  Plaintiff's Response with Brief in Opposition to Defendants' Motion to Dismiss/Motion for Summary Judgment [Doc. 66] at p. 10 (Dec. 3, 2010).  The suggested dismissals are based on allegations in the complaint rather than any facts adduced during discovery.  *See supra* pp. 54-60.  If Mr. Stephens believes that the pleading defects

---

[97]     Mr. Stephens does not implicate Mr. Owens in the retaliation claim that should otherwise survive the dispositive motion.  *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 19 (Feb. 18, 2010); *see also supra* pp. 23-30.

are curable, the proper procedure would be to file a motion for leave to amend the complaint. *See* Fed. R. Civ. P. 15(a)(2). But, the Plaintiff cannot avoid dismissal when the existing complaint does not state a valid personal-capacity claim on which relief could be granted against Mr. Jones, Mr. Owens, Mr. Vaughn, Ms. McCoy, or Ms. Laymon. *See supra* pp. 54-60.

## SUMMARY OF THE RECOMMENDED RULINGS

The Court should grant the Defendants' motion for summary judgment on the claims concerning:

- inadequacy of the diet,

- inadequacy of court access based on the failure to respond to an oral request for internet information,

- breach of confidentiality, and

- deliberate indifference to a serious medical condition.

The Court should dismiss the claims involving:

- interference with court access through the delay in March 2009 with respect to delivery of internet information requested in writing;

- a request for monetary damages against Defendants Jones and McCoy in their official capacities;

- interference with court access through the opening of legal mail and deprivation of legal materials; and

- due process violations through inadequate grievance procedures and forced participation in a prison program.

The present report, if adopted, would leave only two claims.

The first claim involves retaliation through termination of prison employment. The remaining defendants on this claim would be:

- Mr. Jones and Ms. McCoy in their official capacities and

- Mr. Monday, Ms. Stebens, and Dr. Stewart in their personal capacities.

For the official-capacity claims against Mr. Jones and Ms. McCoy, the only possible remedies would be a prospective declaratory judgment and injunction.

The second remaining claim would involve denial of equal protection by Mr. Jones in his official capacity. Again, the Plaintiff would be limited to prospective declaratory and injunctive relief.[98]

## NOTICE OF THE RIGHT TO OBJECT

The parties can object to this report and recommendation. To object, the party must file an objection with the Clerk of this Court by June 13, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.). The failure to timely object would foreclose appellate review of the suggested rulings.[99]

---

[98]     Mr. Stephens has not specified any injunctive relief on this claim. *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 23 (Feb. 18, 2010) (requesting injunctive relief to protect his legal material and to prevent DOC retaliation); *see also supra* p. 5. But Mr. Stephens has not limited his injunction request to these two measures, and his examples would not prevent the availability of a remedy on the equal protection claim. *See* Civil Rights Complaint-Pursuant to Title 42 § 1983 at p. 23 (Feb. 18, 2010); *see also* Fed. R. Civ. P. 54(c) (stating that every judgment, other than a default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

[99]     *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The present report does not discharge the referral.

Entered this 26th day of May, 2011.

Robert E. Bacharach
United States Magistrate Judge