IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT MARK STEPHENS,       )
                            )
        Plaintiff,          )
                            )
v.                          )    Case No. CIV-10-166-D
                            )
JUSTIN JONES, *et al.*,     )
                            )
        Defendants.         )

## REPORT AND RECOMMENDATION: THE PLAINTIFF'S MOTION FOR SANCTIONS

The Plaintiff moves for sanctions under Fed. R. Civ. P. 11(c) and 37(b). The motion should be denied, as it is legally improper and factually unsupportable.

<u>Procedural Invalidity of the Motion</u>

The threshold issue is whether sanctions can be imposed under either of the rules relied upon by Mr. Stephens. The Court should answer in the negative.

Fed. R. Civ. P. 37 addresses sanctions for discovery violations. None of the alleged wrongdoing involved a discovery request or discovery order. Thus, Rule 37 would not support sanctions.

Rule 11 authorizes sanctions, but only if the proponent sends the proposed motion to the adversary and gives him 21 days to withdraw or correct the problematic document. *See* Fed. R. Civ. P. 11(c)(2). Mr. Stephens did not send his proposed motion to the Defendants or their attorney. Instead, he wrote defense counsel and stated that he would file a motion

for sanctions on grounds appearing in his response to the Defendants' summary judgment motion and "other previously-filed pleadings in the Court record of this action."[1] There were eighteen such documents.[2]

By stating that he was intending to file a motion for sanctions based on the complaints that he had made in all of his prior submissions, the Plaintiff failed to specify what he wanted the Defendants to correct or withdraw. For even an educated guess, the Defendants would have needed to comb through eighteen documents. An incorrect guess would have exposed the Defendants to sanctions if they failed to correct something based on a complaint hidden within Mr. Stephens' eighteen filings. In these circumstances, the Plaintiff's failure to comply with Rule 11(c)(2) was material and prejudicial.

The Tenth Circuit Court of Appeals addressed a similar issue in *Roth v. Green,* 466 F.3d 1179 (10th Cir. 2006). Relying on the text of the rule, the advisory committee notes, and the reasons for the advanced notice requirement in Rule 11, the court squarely held that "warning letters" did not serve as a suitable substitute for a copy of the proposed motion.[3]

The Plaintiff seeks to avoid Rule 11(c)(2) based on consideration of his letter as "substantial compliance."[4] For this proposition, the Plaintiff relies on *Nisenbaum v.*

---

[1] Letter from Robert Mark Stephens to Margie Weaver (Dec. 2, 2010).

[2] The complaint was Mr. Stephens' only true "pleading." *See* Fed. R. Civ. P. 7(a) (setting out the permissible "pleadings"). By referring to his "pleadings" in the plural, Mr. Stephens was apparently using the term to denote his prior motions and briefs as well as the complaint.

[3] *Roth v. Green*, 466 F.3d at 1192-93.

[4] Doc. 84 at p. 3.

*Milwaukee County*, 333 F.3d 804 (7th Cir. 2003).[5] There the Seventh Circuit Court of Appeals held that transmittal of a "letter" or "demand" - rather than a motion - would serve as substantial compliance with Rule 11(c)(1).[6] But the Tenth Circuit Court of Appeals has rejected *Nisenbaum v. Milwaukee County*, stating:

> We find the decision unpersuasive . . . because it contains no analysis of the language of Rule 11(c)(1)(A) or the Advisory Committee Notes, cites to no authority for its holding, and indeed is the only published circuit decision reaching such a conclusion.[7]

In the present action, the Court need not decide whether a letter could sometimes serve as an appropriate trigger for the 21-day safe harbor provision in Rule 11(c)(2). Mr. Stephens' broad reference to the arguments, spread throughout eighteen separate documents, obviously lacked the specificity required in the rule. Under these circumstances, the Court should deny sanctions based on Mr. Stephens' failure to comply with Rule 11(c)(2).

### Substantive Invalidity of the Motion

The Plaintiff's motion for sanctions is also unsupportable as a factual matter.

Mr. Stephens complains of:

- electronic filing of a document reflecting an unfavorable comment by a prison psychologist;

- failure to attach some of the pertinent documents to the special report;

---

[5] Doc. 84 at p. 3.

[6] *Nisenbaum v. Milwaukee County*, 333 F.3d at 808.

[7] *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) (citation omitted).

- failure to "begin" a summary judgment brief with a statement of undisputed facts;

- failure to include the words "under penalty of perjury" in the Defendants' affidavits attached to the special report; and

- denials in the "answer" for allegations that should have been "admitted" or subject to a "qualified denial."

These complaints are unconvincing.

I. <u>Electronic Filing of a Psychological Report</u>

In part, the Plaintiff bases sanctions on the electronic filing of a psychological assessment as an exhibit in the special report.[8] According to the Plaintiff, the document was confidential under Oklahoma law, Okla. Stat. tit. 43A § 1-109(A). But the filer was a non-party and the alleged transgression would not have violated Rule 11 or Rule 37.

First, the special report was filed by the Department of Corrections ("DOC"), which was not a party.[9] Thus, sanctions would not lie against any of the defendants for the DOC's electronic filing of the document.

Second, even if the filing had violated state law, the transgression would not have constituted: (1) a frivolous argument for purposes under Rule 11, or (2) a violation of the

---

[8] Doc. 84 at p. 3; *see* Doc. 78 at p. 2; Doc. 81 p. 7, p. 20 n.12, p. 21.

[9] One defendant, Mr. Marvin Vaughn, attested to the accuracy of the special report. Doc. 49 at p. 10. However, Mr. Vaughn did not comment on the attachments to the report and there is nothing to suggest that he could have known that the psychologist's report was being electronically filed.

4

discovery rules for purposes of Rule 37. Thus, the alleged violation of Oklahoma law could not have justified sanctions under Rule 11 or Rule 37.

II.     Omission of Some Documents in the Special Report

The Plaintiff also contends that the special report was incomplete. The only examples given in the Plaintiff's eighteen filings were: (1) the back-side of Grievance No. 09-38 and attachments;[10] (2) DOC OP-140101;[11] (3) DOC OP-140117;[12] (4) the back side of the Plaintiff's appeal of Grievance No. 09-46;[13] (5) the relevant medical procedure, DOC OP-140108;[14] and (6) DOC OP-090124.[15] But the entity filing the special report, the DOC, was

---

[10]    Doc. 72 at p. 3; Doc. 81 at p. 4 n.4.

[11]    Doc. 81 at p. 8 n.7.

[12]    Doc. 81 at p. 19.

[13]    Doc. 81 at p. 17.

[14]    Doc. 81 at p. 17.

[15]    Doc. 53 at p. 3; Doc. 81 at pp. 4-5. Although OP-090124 had been omitted in the special report, the Defendants had attached this set of policies to their summary judgment brief prior to the Plaintiff's filing of a motion for sanctions. Doc. 66, Exh. 1.

not a party[16] and its alleged omissions[17] would not have constituted a frivolous submission under Rule 11 or a discovery violation under Rule 37.[18]

III.   The Defendants' Statement of Undisputed Facts

Local Civil Rule 56.1(b) requires each person seeking summary judgment to begin his brief with a statement of undisputed facts. The Defendants included a statement of undisputed facts, but did not "begin" their brief with this section. Instead, they included an introduction and discussion of the standards for dismissal and summary judgment before listing the undisputed facts.[19] The Plaintiff alleges violation of Rule 56.1(b) because the statement of undisputed facts did not appear at the beginning of the Defendants' brief.[20]

This argument for sanctions is not persuasive. Even if the local civil rule had been violated, the transgression would not have constituted a violation of Rule 11 or Rule 37. As noted above, Rule 37 addresses only discovery violations[21] and Rule 11 involves

---

[16]   *See supra* p. 4.

[17]   The Plaintiff states that the Defendants had conceded omission of required rules in the special report. Doc. 84 at p. 3. For support, the Plaintiff cites Doc. 55 at p. 3. There the Defendants simply said that they had forwarded a motion to DOC officials so that they could assess the need for supplementation of the special report. Doc. 55 at p. 3. The Defendants did not admit a defect in the special report, as Mr. Stephens has represented.

[18]   *See supra* pp. 4-5.

[19]   *See* Doc. 66 at pp. 1-4.

[20]   Doc. 84 at p. 4.

[21]   *See supra* p. 1.

frivolousness.[22] The alleged violation of the formatting requirements would not have fallen under either rule and would not have justified sanctions.

IV.     The Defendants' "Affidavits"

The Plaintiff also seeks sanctions based on the submission of affidavits with the special report that omit the phrase, "under penalty of perjury."[23]  This argument is unpersuasive. There were six affidavits with the special report, and each affiant - Dr. Jeff Troutt, Dr. Walter Gadberry, Ms. Genese McCoy, Mr. Joe Owens, Mr. Marvin Vaughn and Ms. Linda Eike - said that he or she had been "dully [sic] sworn."[24]  Even if this phrase had not sufficed for an affidavit, the defect would not have subjected the signers to sanctions under Rule 11. There was no duty to attach affidavits to the special report. Thus, even if the six documents had not qualified as "affidavits," the omission of qualifying language could not have subjected Mr. Vaughn, Ms. Eike, Dr. Troutt, Dr. Gadberry, Mr. Joe Owens, or Ms. Genese McCoy to sanctions under Rule 11 or Rule 37.

---

[22]     *See* Fed. R. Civ. P. 12(b)-(c)(1).

[23]     Doc. 84 at p. 3.

[24]     Doc. 49 at pp. 9-10 & Exh. 23.

Ms. Eike's affidavit merely said that she was over 21, was competent, was employed by the DOC as an Administrative Programs Officer I at the prison, and was serving as the grievance manager for the prison. Doc. 49 at p. 9.

Dr. Gadberry's document attested to the fact that he was over 21, was competent to testify, and was a medical doctor employed by the DOC. Doc. 49, Exh. 23.

The attestations by Dr. Gadberry and Ms. Eike served no known purpose.

7

V.  The Defendants' Answer

In the "answer," the Defendants denied paragraphs 6-7, 19, 21, 25, 45, 50, 53-54, 62, 65, 67, 69, 71, 73-74, 76-77, and 79-80 of the complaint.[25] The Plaintiff states that these denials were improper because his "Exhibit evidence" shows that these matters should have been admitted in part or in whole.[26] This argument is not persuasive.

A.  Paragraphs 6-7, 19, 69, 71, 73-74, 76-77, and 79-80 of the Complaint

In his sanctions motion, the Plaintiff does not identify the alleged "evidence" that would have disproven the Defendants' denials. Indeed, if the Court were to view all of Mr. Stephens' filings between the answer and the motion for sanctions, there had never been any challenge to the Defendants' responses to paragraphs 6-7, 19, 69, 71, 73-74, 76-77, or 79-80.[27] As a result, the Court should decline to impose sanctions for the denials of these paragraphs.

B.  Paragraphs 21, 25, 45, 53-54, 62, 65, and 67 of the Complaint

In urging summary judgment, Mr. Stephens referred to evidence that had allegedly supported his allegations in paragraphs 21, 25, 45, 53-54, 62, 65, and 67.[28] The Plaintiff's

---

[25]  Doc. 51 at pp. 2-3, 5-8.

[26]  Doc. 84 at p. 4.

[27]  In a motion for leave to supplement the complaint and application for a temporary restraining order, Mr. Stephens challenged the denials of paragraphs 22, 40, 41, 52, and 66. Doc. 53 at pp. 3-4. But the Plaintiff's subsequent motion for sanctions did not address the allegations in these paragraphs. *See supra* p. 8.

[28]  Doc. 68 at pp. 2-4, 5-6, 8.

assertion of evidence for his allegations does not suggest that the Defendants' denials had been frivolous. And, independent examination of the Plaintiff's alleged "evidence" would not suggest frivolousness in the Defendants' denials.

Paragraph 21

For example, in paragraph 21 of the complaint, Mr. Stephens alleged:

> On or about January 1, 2009, Defendant Karen Walker, WSKCC Kitchen Supervisor, began a practice of serving a deficient substitute diet to Plaintiff and other WSKCC prisoners due to alleged DOC budget cuts, instead of following the DOC Master Menu for WSKCC prisoners on the Diet for Health, as was doctor-prescribed for Plaintiff's medical history of cholesterol, heart problems, and digestive disorder (Plaintiff has a clear medical history showing constipation and external hemorrhoids when receiving a deficient diet).[29]

The Plaintiff referred to four exhibits to rebut the Defendants' denial of this allegation: Exhibits 7, 22, 24, and 25.[30]

Exhibit 7 consists of a summary of a discussion between prison officials and some inmates.[31] In the summary, unidentified inmates complained of: (1) the failure to provide fresh fruit every day, (2) service of a partially frozen turkey ham on one day, (3) roaches in one housing unit and the kitchen, and (4) failure to serve 1% milk.[32] These complaints do not contradict the Defendants' denial of deficient food substitutions since January 1, 2009.

---

[29] Doc. 1 at p. 8 No. 21.

[30] Doc. 68 at p. 2.

[31] Doc. 53, Exh. 7 at pp. 1-6.

[32] Doc. 53, Exh. 7 at pp. 1-6.

9

Exhibit 22 consists of two pages from a court opinion on Mr. Stephens' claim that he had to undergo a trial without his competency medications.[33] This excerpt does not bear any obvious relationship to the Plaintiff's dietary claim.

Exhibit 24 is an administrative document reflecting a complaint in 2007 about hemorrhoids.[34] Again, this document does not suggest that the Defendants had acted frivolously in their denial of the claim involving inadequate dietary substitutions since January 1, 2009.

Exhibit 25 is a 2008 medical request by Mr. Stephens for a cardiac healthy diet.[35] This exhibit does not contradict the Defendants' denial of paragraph 21.

Viewed individually or collectively, Exhibits 7, 22, 24, and 25 would not suggest frivolousness in the Defendants' denial of paragraph 21. Thus, the Court should decline to sanction the Defendants for their denial of this paragraph.

Paragraph 25

In paragraph 25 of the complaint, Mr. Stephens alleged submission of a request to staff on February 23, 2009 "on the issue that being deprived of any opportunity for access to internet information on competency medications was resulting in legal damage before the

---

[33] Doc. 68, Exh. 22 at p. 1.

[34] Doc. 68, Exh. 24.

[35] Doc. 68, Exh. 25 at p. 2.

courts."[36] To rebut the Defendants' denial of this allegation, Mr. Stephens relies solely on the request to staff.[37] There the Plaintiff complained about the staff-member's failure to respond to a prior request for internet information.[38] The staff member responded: "This is the first Request to Staff that I have received from you on this matter. You just need to write on a Request to Staff the information that you need so that I can retrieve it for you."[39] This document does not contradict the Defendants' denial of "legal damage" from the inability to obtain internet information, as alleged in paragraph 25 of the complaint. Thus, the Court cannot regard the Defendants' denial of paragraph 25 as frivolous based on the face of the Plaintiff's request to staff. In these circumstances, the Court should decline to issue sanctions for the denial of paragraph 25.

Paragraph 45

The Plaintiff has also complained about the denial of paragraph 45. This allegation states:

> On June 30, 2009, Plaintiff had a medical appointment with Defendant, Dr. Cuong Pham, who stated his medical belief that Plaintiff's health problem, i.e. severe, bloody diarrhea and dysentery-like symptoms, were likely caused by a contaminated food source such as milk. Blood was drawn from Plaintiff for testing. Defendant Dr. Cuong Pham placed Plaintiff on a medical lay-in until further notice.[40]

---

[36] Doc. 1 at p. 9 No. 25.

[37] Doc. 68 at p. 3 No. 10.

[38] Doc. 65, Exh. 16.

[39] Doc. 65, Exh. 16.

[40] Doc. 1 at p. 13 No. 45.

11

The Plaintiff states that the Defendants' denial is inconsistent with unspecified medical records in the special report.[41] The reason for this statement is unclear. The special report contains the physician's notes from his examination on June 30, 2009.[42] But these notes do not suggest that the Plaintiff's symptoms had been caused by a contaminated food source such as milk.[43] Thus, the Court lacks any evidentiary basis to sanction the Defendants for their denial of paragraph 45.

Paragraph 53

In paragraph 53, the Plaintiff alleged that he had submitted a grievance, No. 09-35, about being misled on where to send a request to staff to on the issue in Grievance No. 09-13.[44] The Plaintiff has not justified sanctions for the Defendants' denial of this allegation.

The Plaintiff relies solely on an admission elsewhere in the answer that the Defendants had received Grievance No. 09-35.[45] The Defendants apparently did receive Grievance No. 09-35, as the DOC submitted a copy of the document with the special report.[46] But, the Plaintiff's description of the grievance was arguably inaccurate. For example, the Plaintiff

---

[41] Doc. 68 at p. 5 No. 30.

[42] Doc. 49, Exh. 19 at p. 35.

[43] Doc. 49, Exh. 19 at p. 35.

[44] Doc. 1 at p. 15 No. 53.

[45] Doc. 68 at p. 6 No. 38; *see* Doc. 51 at p. 6 No. 59 (the Defendants' answer, admitting receipt of "09-35").

[46] Doc. 49, Exh. 13 at p. 3.

states in the complaint that the grievance had involved "intentional" misdirection about where to send the request to staff.[47] The actual grievance does not complain about intentional wrongdoing.[48] Thus, the Defendants' denial of the allegation - with the Plaintiff's arguable mischaracterization of the grievance - was not frivolous.

Paragraphs 54 and 62

In paragraph 54 of the complaint, Mr. Stephens alleged submission of a "sensitive" grievance to Mr. Justin Jones "on the issue of the improper response" by William Monday to a prior grievance, "contrary to DOC procedures, such as OP-090124 § III.E, et seq."[49] Paragraph 62 refers to another grievance on the issue and again cites Mr. Monday's response to a request to staff as a violation of OP-090124.[50] The Defendants' denials of these allegations were not frivolous.

The cited policy, Paragraph III(E) of OP-090124, prohibits determination of an inmate's "formal complaint" by employees who had been "directly involved" in the alleged wrongdoing.[51]

---

[47] Doc. 1 at p. 15 No. 53.

[48] Doc. 49, Exh. 13 at pp. 3-4.

[49] Doc. 1 at p. 15 No. 54.

[50] Doc. 1 at pp. 16-17 No. 62.

[51] Doc. 66, Exh. 1 at p. 3 (eff. May 3, 2007).

13

In alleging violation of this policy, the Plaintiff has relied on Exhibits 18, 35, and 38.[52] Exhibit 38 is a request to staff directed to William Monday. In the request to staff, Mr. Stephens referred to an earlier request to staff dated July 6, 2009.[53] However, the only administrative document filed on July 6, 2009, was a grievance rather than a request to staff.[54] The Plaintiff has not identified a request to staff on July 6, 2009, within the voluminous record. However, the Court may assume *arguendo* that Mr. Monday had responded to a request to staff and that he had been personally involved in the subject-matter.

Still, the Defendants would have been reasonable in denying the allegation in paragraphs 54 and 62 of the complaint, which included characterization of Mr. Monday's response as a violation of OP-090124. As noted above, the policy prohibits involvement by an employee in "determin[ing] the final resolution of [a] formal complaint."[55] The same policy defines an "inmate/offender grievance" as the inmate's "formal complaint."[56] In contrast, a "request to staff" is defined as "[a] system of two-way communication between staff and inmates to resolve complaints/issues informally."[57] Thus, the Defendants could

---

[52]    Doc. 68 at p. 6 No. 39, p. 8 No. 47.

[53]    Doc. 68, Exh. 38 at p. 3.

[54]    Doc. 65, Exh. 18.

[55]    Doc. 66, Exh. 1 at p. 3 (eff. May 3, 2007); *see supra* p. 13.

[56]    Doc. 66, Exh. 1 at p. 1 (eff. May 3, 2007).

[57]    Doc. 66, Exh. 1 at p. 1 (eff. May 3, 2007).

have denied paragraphs 54 and 62 based on a reasonable interpretation of the policy to prohibit an answer by Mr. Monday to a grievance (defined as a "formal complaint"), but not to a request to staff (defined as an informal system of two-way communication). In these circumstances, the Court cannot regard the Defendants' denial of paragraph 54 or 62 as frivolous.

### Paragraph 65

In paragraph 65 of the complaint, Mr. Stephens alleged:

> Since the time of on or about January 1, 2009, Defendant Karen Walker has continued to intentionally refused [sic] to require compliance with DOC Kitchen Food Service rules, policies, and procedures by her subordinate WSKCC Kitchen Supervisors and WSKCC prisoners under her direct supervision and authority.[58]

The Plaintiff rebuts the Defendants' denial with Exhibit 30.[59] This document contains Mr. Stephens' complaints about the food service.[60] But, Mr. Stephens' belief in the validity of his own complaints would not prevent the Defendants from arriving at a contrary belief. As a result, Exhibit 30 would not support characterization of the Defendants' denial as frivolous.

---

[58] Doc. 1 at p. 17 No. 65.

[59] Doc. 68 at p. 8 No. 50. The Plaintiff also referred to Exhibit 6. *Id*. But this reference appears to be a mistake, as Exhibit 6 addressed an unrelated grievance regarding Mr. Stephens' mail. Doc. 53, Exh. 6.

[60] Doc. 68, Exh. 30.

15

Paragraph 67

Paragraph 67 of the complaint entails allegations of intentional misuse, disregard, and/or noncompliance with the DOC grievance procedure to "delay or prevent Plaintiff from satisfying the exhaustion of administrative remedies," as required by federal and state law.[61]

In rebutting the Defendants' denial, Mr. Stephens refers to exhibits allegedly reflecting a failure to track or answer various grievances.[62] Even if the Defendants had deviated from the policy, however, the Plaintiff's criticism would not prevent a good-faith denial of an intent to "delay or prevent" exhaustion of administrative remedies. As a result, the Defendants' denial of paragraph 67 cannot be regarded as frivolous.

Notice of the Right to Object

The Plaintiff is advised of his right to object to this report and recommendation by June 20, 2011.[63] If the Plaintiff does object, he must file a written objection with the Court Clerk for the United States District Court, Western District of Oklahoma. The Plaintiff is further advised that if he does not timely object, he would waive his right to appellate review of the suggested ruling.[64]

---

[61] Doc. 1 at p. 18 No. 67.

[62] Doc. 68 at p. 8 No. 52.

[63] *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.).

[64] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Status of the Referral

The referral has not been discharged.

Entered this 3rd day of June, 2011.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge