IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROBERT MARK STEPHENS,          )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-10-166-D
                               )
JUSTIN JONES, *et al.*,        )
                               )
            Defendants.        )

**O R D E R**

Before the Court is the Motion for Summary Judgment [Doc. No. 179] of Defendants Justin Jones, Genese McCoy, William Monday, Mary Stebens and John Stewart, filed pursuant to Fed. R. Civ. P. 56. Plaintiff Robert Mark Stephens, represented by counsel, has timely opposed the Motion, which is fully briefed and at issue.

**Factual and Procedural Background**

Plaintiff, formerly a state prisoner, brought this civil rights action under 42 U.S.C. § 1983 during his confinement by the Oklahoma Department of Corrections ("DOC") at the William S. Key Correctional Center ("WKCC"). The case was referred to a magistrate judge for initial proceedings. As a result of those proceedings, the Court determined that the named defendants were entitled to dismissal or summary judgment on all claims asserted in the Complaint except a First Amendment retaliation claim regarding Plaintiff's removal from a prison job in the law library. *See* Order of Sept. 30, 2011 [Doc. No. 135]. The remaining defendants on this claim are DOC Director Justin Jones and DOC administrator Genese

McCoy in their official capacities for declaratory relief only,[1] and individual defendants William Monday (WKCC deputy warden), Mary Stebens (WKCC health services administrator) and John Stewart (WKCC psychologist). *See* Report & Recom. [Doc. No. 103], p. 62. Plaintiff took an appeal, and the case was stayed during the pendency of the appeal. The court of appeals determined it had jurisdiction only to review an order denying Plaintiff's motion for preliminary injunctive relief, and affirmed. *See Stephens v. Jones*, 494 F. App'x 906 (10th Cir. 2012). After receipt of the mandate, the Court arranged legal representation for Plaintiff and entered a scheduling order, which was later amended upon joint motion of the parties. Following discovery, Defendants timely filed their dispositive motion.

**Standard of Decision**

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks

---

[1] Because Plaintiff has satisfied his criminal sentence and been released, an additional request for injunctive relief is moot.

2

evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Undisputed Facts[2]

Plaintiff has a history of mental health problems that predate his incarceration. He received inpatient mental health treatment from May to September, 2001, following his arrest

---

[2] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1) or otherwise shown by the record. If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

3

on criminal charges. Plaintiff was subsequently convicted of first-degree robbery with a firearm and attempted kidnaping, and received a 15-year prison sentence. Plaintiff was received into DOC custody in February, 2002, and transferred to WKCC in August, 2006. He was assigned to work as a law clerk in the WKCC law library in April, 2008, and worked under the supervision of a library staff member, Jackie Perkins. In April, 2009, Plaintiff successfully completed a law clerk training program and received a certificate of achievement. He consistently received high marks on his monthly job evaluations.

At the request of WKCC medical staff, Dr. Stewart, a licensed psychologist employed at WKCC, examined Plaintiff regularly beginning in March, 2009, due to a delusional disorder. Plaintiff declined Dr. Stewart's recommendation for treatment with medication. On June 30, 2009, Dr. Stewart examined Plaintiff and, as a result, became concerned about a decline in Plaintiff's mental health. Plaintiff continued to refuse medication, despite Dr. Stewart's effort to persuade him that it would be beneficial. On July 1, 2009, Dr. Stewart sent an email message to Deputy Warden Monday to inform him of an issue concerning Plaintiff's mental health condition. Dr. Stewart stated in pertinent part as follows:

> Mary [Stebens] and I consulted after my assessment of [Plaintiff] yesterday and we are both concerned that he works in the law library. He appears to be unstable. He is often alone in the law library with Jackie which could present a safety issue. In addition, he is assisting others while expressing his delusional thoughts. I am concerned this may lead to offenders becoming disgruntled based on his delusions. As a result of these concerns, I recommend that he be removed from the law library.

4

Special Report [Doc. No. 49], attach. 3. Dr. Stewart also sent an interoffice memorandum to Kathy Waggoner, a case manager supervisor who was responsible for inmate job assignments. The memorandum stated:

> Mr. Stephens['] level of mental health functioning has appeared to have declined. As a result, I do not believe he is stable enough to be working in the law library. His condition will continue to be monitored and should his functioning improve, his ability to work there will be reassessed.

Sealed Exhibits [Doc. No. 50], p. 19 (ECF page numbering). On July 2, 2009, Deputy Warden Monday informed Plaintiff that he could no longer work in the law library.

From July 7, 2009, through November 17, 2009, Plaintiff was regularly examined by Dr. Stewart and continued to express delusional thoughts. When Plaintiff filed a grievance regarding his removal from the law clerk position, Deputy Warden Monday informed him that "Dr. Stewart has deemed you unfit to work in the law library. I am following a recommendation from psych services." *See* Special Report [Doc. No. 49], attach. 3.

Plaintiff frequently received medical services in 2009 for physical complaints and symptoms. During an evaluation on April 4, 2009, a physician discussed with Plaintiff that their relationship would be impaired if he continued to file a complaint or grievance every time that he was dissatisfied with the care he received. Throughout 2009, Plaintiff filed inmate grievances and pursued the administrative process concerning a number of issues. The issues included participation in an earned credit program, a request for internet information cited by the Tenth Circuit in one of his cases, a request for health services, food service for a medically prescribed diet, grievance procedures, and the outgoing mail policy.

5

Of 54 formal grievances logged at WKCC for calendar year 2009, Plaintiff submitted eight. Although only three of these grievances were submitted before Plaintiff's change of job assignments, Plaintiff submitted a "request to staff" form to Deputy Warden Monday regarding his dietary complaint on July 1, 2009, the same day that Dr. Stewart recommended a job change and the day before Deputy Warden Monday informed Plaintiff of the decision.[3]

**Defendants' Motion**

Defendants contend Plaintiff cannot establish any of the essential elements of his retaliation claim: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Leverington v. City of Colorado Springs* 643 F.3d 719, 729 (10th Cir. 2011) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)); *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).[4]

---

[3] During preliminary proceedings in the case, the applicable policy regarding DOC's inmate grievance process was presented (Defs.' Mot. Dism./Mot. Summ. J., Ex. 1 [Doc. No. 66-1]), and the process is described in the magistrate judge's Report and Recommendation issued May 26, 2011. Thus, although the parties do not explain or present any evidence regarding DOC grievance procedures in their present briefs, the Court takes judicial notice that a "request to staff" form represents the first written step of the grievance process. *See* Report & Recom. on Defs.' Mot. Dism./Mot. Summ. J. [Doc. No. 103], p. 7.

[4] This test applies when the defendant is not the plaintiff's employer and when there is no contractual relationship between the parties. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Plaintiff attempts to establish an employment relationship based on a statute regarding state prison industries. *See* Okla. Stat. tit. 57, § 545. The statute expressly provides, however: "Inmates employed by prison industries are not state employees . . . ." *Id*. § 545(B). Further, Plaintiff provides no factual basis for his implicit contention that his law clerk assignment was employment in a prison industry.

**Discussion**

**1.      Constitutionally Protected Activity**

Defendants maintain that an inmate does not have a constitutional right of access to a prison grievance system and, thus, Plaintiff's participation in WKCC's grievance process was not constitutionally protected activity. Defendants primarily rely on an unpublished Tenth Circuit decision, *Von Hallcy v. Clements*, 519 F. App'x 521 (10th Cir. 2013), and attempt to distinguish published opinions that suggest the opposite rule. *See*, *e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006).

The Court is not persuaded by Defendants' argument. Regardless whether the issue has been addressed consistently in unpublished decisions, the Court is bound by published opinions of the Tenth Circuit holding that "if in fact DOC officials retaliated against [an inmate] based on his filing administrative grievances, they may be liable for a violation of his constitutional rights." *Fogle*, 435 F.3d at 1264; *see also Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (district court erred in dismissing plaintiff's claim that he was denied job assignments or reassigned in retaliation for filing administrative grievances). Further, notwithstanding *Von Hallcy*, which did not mention *Gee* or *Fogle*, other unpublished decisions of the Tenth Circuit have stated the holding of *Gee* to be that "[f[iling a prison grievance qualifies as 'constitutionally protected activity' under the First Amendment." *See Tennyson v. Carpenter*, 558 F. App'x 813, 819 (10th Cir. 2014); *see also Lewis v. Clark*, – F. App'x –, 2014 WL 4197340, *10 (10th Cir. Aug. 26, 2014); *Allen v. Avance*, 491 F. App'x 1,

7

6 (10th Cir. 2012). In fact, the principle has been found to be sufficiently well-established to overcome a qualified immunity defense. *See Allen*, 491 F. App'x at 6-7.

Accordingly, the Court finds that the undisputed facts show Plaintiff engaged in constitutionally protected activity before he was removed from his law clerk position.

**2.     Chilling Effect**

Defendants also argue that Plaintiff's job reassignment was not an act that would deter an ordinary inmate from utilizing the prison grievance system and, in fact, did not have that effect on Plaintiff because he continued to file grievances after being reassigned. Defendants acknowledge that the standard for evaluating the chilling effect of an adverse action is an objective one. *See* Defs.' Motion [Doc. No. 179] at 15 (citing *Smith v. Platt*, 258 F.3d 1167, 1176-77 (10th Cir. 2001)); *see also Shero*, 510 F.3d at 1203. However, the focus of their argument is Plaintiff's subjective response to the action, which was to file more grievances. *See id.* at 14-15. This argument is unavailing. Under the holding of *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991), "although plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another."

Under the undisputed facts of this case, the Court finds that Plaintiff has sufficiently demonstrated an act that, viewed objectively, would have a chilling effect on a reasonable inmate's grievance activities.

**3.     Retaliatory Motive**

To establish that the job reassignment was substantially motivated by protected activity, Plaintiff "must prove that 'but for' the retaliatory motive, the [incident] to which he refers . . . would not have taken place." *See Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990); *see also Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "'Although protected conduct closely followed by adverse action may justify an inference of retaliatory motive, the mere temporal proximity of Plaintiff's protected speech to the adverse action is insufficient, without more, to establish retaliatory motive.'" *See Couch v. Board of Trustees*, 587 F.3d 1223, 1236 (10th Cir. 2009) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005) (internal quotations, citations and alterations omitted in *Couch*);[5] *see also Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014) (applying *Worrell* test, stating that "temporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive").

In this case, the facts on which Plaintiff relies to establish retaliatory motive consist solely of the temporal proximity between a grievance submitted to Deputy Warden Monday and the removal of Plaintiff from his law clerk job,[6] and Plaintiff's outstanding performance

---

[5] Although *Couch* involved public employment and was governed by a different test, the causation element of that test is similar to the causation element of the test applicable in this case, that is, whether protected speech "was a substantial factor or a motivating factor in a detrimental employment decision." *Couch*, 587 F.3d at 1235 (internal quotation omitted).

[6] Plaintiff also notes that he had earlier submitted grievances to Mary Stebens and others about health service issues. However, none of these were in close proximity to his job change. *See Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1183-84 (10th Cir. 2002) (three-month gap between protected activity and adverse action was too long to establish causation).

9

record in that job. *See* Pl.'s Resp. Br. [Doc. No. 184], p. 16. Noticeably absent from Plaintiff's argument is any discussion of the reasons given by Defendants for Plaintiff's job reassignment, which was not based on poor performance, or any facts suggesting that the concerns expressed by Dr. Stewart were a pretext for retaliation. Dr. Stewart was a person to whom or about whom Plaintiff had never submitted a complaint or grievance. The undisputed facts show, however, it was Dr. Stewart's recommendation that sparked the reassignment decision.

In summary, Plaintiff has presented no fact, other than the close timing between his submission of a grievance to Deputy Warden Monday and the decision to remove Plaintiff from his law library assignment, from which to infer a retaliatory motive. Defendants, on the other hand, have overcome this inference with undisputed evidence that Plaintiff's job reassignment was based on Dr. Stewart's professional judgment and the institutional concerns on which his recommendation was based. On the summary judgment record presented, the Court finds insufficient facts from which a reasonable jury could conclude that the reassignment decision was substantially motivated by Plaintiff's grievance activities. Therefore, Plaintiff has failed to demonstrate a genuine dispute of material facts regarding his retaliation claim.

## Conclusion

For these reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's sole remaining claim, that his employment in the prison library was terminated in retaliation for his protected activity of filing and pursuing prison grievances.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 179] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of September, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE